### STATE OF CONNECTICUT *v.* RAYMOND RAPUANO
### (11329)

SPEZIALE, C. J., PETERS, PARSKEY, SHEA and GRILLO, Js.

Argued December 2, 1983—decision released February 14, 1984

*M. Yvonne Gonzalez,* for the appellant (defendant).

*Guy W. Wolf III,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Kimberly Grillo,* legal intern, for the appellee (state).

SHEA, J. The defendant appeals from a trial court order granting the state's motion to disqualify his counsel.[1] In his appeal he claims that a substantial change in circumstances has removed the problem that led the trial court to disqualify his attorney, thereby requiring reversal without reaching the merits. He also maintains that if we decide the merits of the appeal, we should reverse because the court would not permit a limited waiver of the sixth amendment right to counsel in order to avoid the order of disqualification.

There is no substantial dispute as to the facts: Attorney Robert Casale had been retained by Raymond Rapuano and Lenny Gordon to represent them at their joint trial. Both men had been charged with burglary, robbery, and conspiracy to commit the substantive offenses.[2] In preparation for trial, Casale met frequently with Gordon's wife, who had indicated that she would testify for her husband. In fact, Mrs. Gordon had been listed as an alibi witness by Mr. Gordon.

---

[1] The denial of a motion to disqualify an attorney is not an appealable final judgment. *Firestone Tire & Rubber Co.* v. *Risjord,* 449 U.S. 368, 101 S. Ct. 669, 66 L. Ed. 2d 571 (1981); *State* v. *Powell,* 186 Conn. 547, 442 A.2d 939, cert. denied sub nom. *Moeller* v. *Connecticut,* 459 U.S. 838, 103 S. Ct. 85, 74 L. Ed. 2d 80 (1982). The granting of a motion to disqualify an attorney is, however, an appealable final judgment. See *Armstrong* v. *McAlpin,* 625 F.2d 433, 440–41 (2d Cir. 1980), vacated on other grounds and remanded, 449 U.S. 1106, 101 S. Ct. 911, 66 L. Ed. 2d 835 (1981); *Goldenberg* v. *Corporate Air, Inc.,* 189 Conn. 504, 457 A.2d 296 (1983).

[2] The state maintained that the two defendants planned their crimes from the Gordon residence. Although Gordon admitted being at his home on the evening of the crimes, he denied that any crimes had been orchestrated from there. Rapuano denied that he was present at the Gordon residence on the evening in question.

In January of 1982, Mrs. Gordon entered the Federal Witness Protection Program, and agreed to become a witness for the state. In March, after Casale was informed that Mrs. Gordon had agreed to waive her spousal immunity and testify against her husband, Casale made a motion to withdraw as counsel for Gordon.

At the hearing on the motion, Casale stated, "[i]f I were to put to her questions directed to explore the conversations she had with me I would be pitting my credibility against hers . . . the only way rebuttal evidence could be introduced would be for me to get on the witness stand." The motion to withdraw was granted.

The next day the state made a motion to disqualify Casale from representing the defendant Rapuano. The state maintained that because Mrs. Gordon's testimony could inculpate Rapuano as well, Casale might also be required to testify on behalf of Rapuano. In support of its motion the state relied in part on Disciplinary Rule 5-102 (A),[3] and in part on the court's supervisory power over attorneys.

Casale represented to the court that he could not reasonably foresee having to testify on behalf of his client, Rapuano, because all his conversations with Mrs. Gordon concerned her husband and not Rapuano. He also stated that Rapuano had expressed his willingness to limit Casale's cross-examination of Mrs. Gordon, and waive his right to effective assistance of counsel.[4]

---

[3] Code of Professional Responsibility, DR 5-102 (A) provides: "(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5-101 (B)."

[4] Casale stated, "[t]here is no problem of cross-examination of Mrs. Gordon about Rapuano because I had no conversations with Mrs. Gordon about [him], but to the extent that there may be a problem Mr. Rapuano is pre-

Casale also suggested that if the court granted a motion for severance, the potential problem could be avoided and his client's right to the counsel of his choice preserved. The court granted the state's motion, declaring that continued representation would result in a violation of a disciplinary rule.

While this appeal was pending, Lenny Gordon was tried and convicted. His wife testified against him; and although he was subpoenaed, Casale was not called as a witness.

Whenever counsel for a client reasonably foresees that he will be called as a witness to testify on a material matter, the proper action is for that attorney to withdraw from the case. See *State* v. *Blake,* 157 Conn. 99, 102–103, 249 A.2d 232 (1968); *Jennings Co.* v. *DiGenova,* 107 Conn. 491, 497–99, 141 A. 866 (1928); Code of Professional Responsibility DR 5-102 (A), Practice Book, p. 31. An attorney is not absolutely prohibited from testifying on behalf of a client, but should only do so when the testimony concerns a formal matter, or the need for the testimony arises from an exigency not reasonably foreseeable. *French* v. *Hall,* 119 U.S. 152, 7 S. Ct. 170, 30 L. Ed. 375 (1886); *State* v. *Blake,* supra; *Miller* v. *Urban,* 123 Conn. 331, 333–34, 195 A. 193 (1937).

The rule is premised upon the belief that when "a lawyer is both counsel and witness, he becomes more easily impeachable for interest and thus may be a less effective witness. Conversely, the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. An advocate who becomes a witness is in the unseemly and ineffective position of arguing

pared to waive it [his sixth amendment right], and I am prepared to state to the record and define and limit my cross-examination accordingly." Mr. Rapuano had in fact signed a waiver of his right to effective assistance of counsel and his right to confront witnesses.

his own credibility. The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another; while that of a witness is to state facts objectively." Code of Professional Responsibility, EC 5-9, Practice Book, p. 27; *French* v. *Hall,* supra; *Miller* v. *Urban,* supra; *Jennings Co.* v. *DiGenova,* supra. Generally, the decision to withdraw will be made in the first instance by the attorney,[5] as was done by Casale in his representation of Gordon. Where, however, an attorney does not withdraw, a court exercising its supervisory power can enforce the mandate of DR 5-102 (A) and disqualify the attorney. See *State* v. *Jones,* 180 Conn. 443, 448, 429 A.2d 936 (1980), and cases cited therein.

In determining whether to disqualify an attorney when continued representation may result in a violation of a disciplinary rule, a court must balance the risk of violation and its consequences against the defend-

---

[5] Code of Professional Responsibility, EC 5-10 provides guidance for an attorney confronted with the dilemma of whether to withdraw or remain as counsel: "EC 5-10 Problems incident to the lawyer-witness relationship arise at different stages; they relate to whether a lawyer either should accept employment or should withdraw from employment. Regardless of when the problem arises, his decision is to be governed by the same basic considerations. It is not objectionable for a lawyer who is a potential witness to be an advocate if it is unlikely that he will be called as a witness because his testimony would be merely cumulative or if his testimony will relate only to an uncontested issue. In the exceptional situation where it will be manifestly unfair to the client for the lawyer to refuse employment or to withdraw when he will likely be a witness on a contested issue, he may serve as advocate even though he may be a witness. In making such decision, he should determine the personal or financial sacrifice of the client that may result from his refusal of employment or withdrawal therefrom, the materiality of his testimony, and the effectiveness of his representation in view of his personal involvement. In weighing these factors, it should be clear that refusal or withdrawal will impose an unreasonable hardship upon the client before the lawyer accepts or continues the employment. Where the question arises, doubts should be resolved in favor of the lawyer's testifying and against his becoming or continuing as an advocate."

ant's right to counsel of his choice.[6] If there is an actual violation or there is a substantial likelihood that a disciplinary rule will be violated, the court may disqualify the attorney. Whether the court properly applied that test in this case we need not decide because we agree with the defendant that a change in circumstances has substantially altered the facts presented to the court at the time of the motion.

While this appeal was pending Lenny Gordon was tried and convicted. Although Gordon's wife did testify, Casale did not. On remand the trial court should consider whether there still exists a risk that Casale's continued representation of the defendant will result in a violation of a disciplinary rule. If a risk of violation exists, the court should measure the degree of risk and the consequences should the violation occur, and balance it against the defendant's right to counsel of his choice.[7]

---

[6] The right to counsel of one's own choice is by no means absolute. See *United States* v. *Curcio,* 694 F.2d 14, 23 (2d Cir. 1982); *United States* v. *Sheiner,* 410 F.2d 337 (2d Cir.), cert. denied, 396 U.S. 825, 90 S. Ct. 68, 24 L. Ed. 2d 76 (1969). For example, the state may require the attorney to be admitted to the bar of that state; *State* v. *Reed,* 174 Conn. 287, 292, 386 A.2d 243 (1978); or licensed by some state. *State* v. *Wheeler,* 37 Conn. Sup. 693, 697, 435 A.2d 372 (1981).

[7] The defendant has advanced the argument that by waiving his own sixth amendment rights to counsel and to confrontation, he could have removed the risk that his attorney might violate a disciplinary rule. Because of our disposition, we intimate no opinion on this question. We pause to note, however, that the right to confrontation and effective assistance of counsel are vitally important to any criminal defendant seeking to establish innocence. In certain instances a defendant may desire to waive these rights. *Faretta* v. *California,* 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975) (waiving right of appointed counsel in order to represent himself); *United States* v. *Curcio,* 694 F.2d 14, 23 (2d Cir. 1982) (waiving right to conflict-free representation in order to retain joint representation). We hasten to add, however, that a waiver should be accepted only after judicial inquiry, determining that the defendant's decision has been knowingly, intelligently, and voluntarily made. *Johnson* v. *Zerbst,* 304 U.S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938).

The case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.