MARY M. HERRMANN *v.* SUMMER PLAZA
CORPORATION ET AL.
(12696)

PETERS, C. J., SHEA, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued March 5—decision released August 26, 1986

*William S. Herrmann,* with whom, on the brief, was *Ellen L. F. Strauss,* for the appellant (plaintiff).

*Frank H. D'Andrea, Jr.,* with whom, on the brief, was *Brian D. Rosenfeld,* for the appellees (defendants).

SANTANIELLO, J. In this action for breach of contract and negligence, the plaintiff, Mary Herrmann, sought money damages from the defendants, Summer Plaza Corporation and Louis Evangelista. On the day the case was to be tried, the court dismissed the action. The plaintiff appeals, arguing principally that the trial court erred: (1) in denying her application for appointment of counsel pro hac vice; and (2) in dismissing her action pursuant to Practice Book § 251 for failure to prosecute with diligence. We find no error.

A review of the record has revealed the following facts. On August 2, 1979, the plaintiff instituted this boundary and surface water cause of action by obtaining a prejudgment remedy attachment. Pleadings were subsequently filed by both sides and issue was joined on May 23, 1980. A jury claim was filed by the plain-

tiff on May 22, 1980, followed by the defendants' claim for the trial list on May 23, 1980. Subsequently, numerous miscellaneous motions were filed for the purpose of gathering information in preparation for trial. The matter reached the assignment list and was assigned for trial on January 18, 1985. On that date, the plaintiff raised several objections to starting trial, primarily claiming that discovery had not been fully complied with, and that she had not received a transcript of a deposition taken approximately five weeks earlier. After much discussion in open court before *West, J.,* the plaintiff's counsel, John J. Berger, represented that he would be willing and able to proceed in two weeks time.[1] The court granted the plaintiff's request for a continuance and reassigned the case for trial on January 31, 1985.

On January 28, 1985, new counsel, Ellen L. F. Strauss, entered a general appearance for the plaintiff in lieu of Berger. On the date set for trial, January 31, 1985, Strauss presented to the court an application for

---

[1] The discussion was as follows: "The Court: How much time are you looking for? What are you looking for?

"Mr. Berger: I would think if we had—I think if we had two weeks, we should have anything, on every side in. And we should be able to proceed. I think under the circumstances, a fair request. That way they should be able to give any information to me that I need. That gives me time enough to look it over. And the other thing is, I hope that I have my deposition within that time.

"The Court: Anything further on this?

"Mr. Berger: No, your Honor.

"The Court: We'll take a brief recess.

"The Court: All right, gentlemen, the court's reviewed your arguments, and the file. It is of the opinion that a [continuance] is in order. And as I recall, Mr. Berger, you stated that you needed two weeks.

"Mr. Berger: Yes, Your Honor, two weeks and I should get my deposition. I'll call the court reporter.

"The Court: January 31, any problem with that, Mr. D'Andrea? January 31, 1985. I expect anyone back here that day, January [31]. Now you hired the court reporter, if you don't get that transcript, there's nothing that, you know, I don't know what we can do about that."

appearance pro hac vice of New York counsel, John F. Martin. While presenting the petition in court, Strauss informed the court that Martin was on trial in New York and would not be available to try this case until some time the following week. The court denied the application and ordered the trial to proceed. Strauss refused to participate, however, and stated to the court that "I don't feel qualified or ready to try the case, [and] it would not be fair to the plaintiff, in addition to the fact that it would put me in a bad position with the plaintiff. I submit that the plaintiff is entitled to her attorney of choice to try this case. Plaintiff fully expected The Court to grant the plaintiff's motion for Attorney Martin to come in. I again respectfully affirm to The Court that I cannot go forward." The court inquired "even if I bring the jury in here and introduce them and so forth, when it comes to the time when you're to speak, you will remain silent, is that what you are indicating?" Strauss responded "Yes." At that point, the defendants orally requested that "this case either be non-suited or pursuant to sections 274 and 251 be dismissed."[2] Thereafter, the court rendered judg-

---

[2] Practice Book § 274 provides: "When a case is reached on the assignment list it shall be tried, defaulted, dismissed pursuant to Sec. 251 or nonsuited, unless for good cause shown the court may order it to be (a) reassigned on a succeeding list; (b) assigned for trial to a future date certain; (c) placed at the end of the trial list; or (d) removed from the trial list. Whenever any privileged or pretried case is ordered placed at the end of the trial list, it shall be placed with the remaining nonprivileged cases.

"Any case so removed from the trial list or from the pretried or privileged section of the trial list may be reclaimed, but the date on which the reclaim was received shall thereafter be considered as the date it was placed on the trial list."

Practice Book § 251 provides: "If a party shall fail to prosecute an action with reasonable diligence, the court may, after hearing, on motion by any party to the action pursuant to Sec. 196, or on its own motion, render a judgment dismissing the action with costs. At least two weeks' notice shall be required except in cases appearing on an assignment list for final adjudication. Judgment files shall not be drawn except where an appeal is taken or where any party so requests."

ment dismissing the action "pursuant to the provisions of Practice Book Sec. 274 and under the authority granted by Practice Book Sec. 251." It is from this judgment of dismissal that the plaintiff appeals.

## I

The plaintiff's first claim is that the court erred when it denied her application for the appointment pro hac vice of New York counsel.

Practice Book § 24 provides in part: "An attorney who is in good standing at the bar of another state . . . may, upon special and infrequent occasion and for good cause shown upon written application presented by a member of the bar of this state, be permitted in the discretion of the court to participate to such extent as the court may prescribe in the presentation of a cause or appeal . . . . Where feasible, the application shall be made to the judge before whom such cause is likely to be tried. Good cause for according such privilege shall be limited to facts or circumstances affecting the personal or financial welfare of the client and not the attorney. Such facts may include a showing that by reason of a longstanding attorney-client relationship predating the cause of action or subject matter of the litigation at bar, the attorney has acquired a specialized skill or knowledge with respect to the client's affairs important to the trial of the cause, or that the litigant is unable to secure the services of Connecticut counsel." This section sets forth the procedure to be followed in making such an application. The plaintiff in this case made no attempt to show good cause. Ordinarily, "the mere fact that a client desires out-of-state counsel to represent him in the courts of this state is not sufficient reason, in and of itself, to warrant granting such permission . . . ." *Silverman* v. *St. Joseph's Hospital,* 168 Conn. 160, 175, 363 A.2d 22 (1975).

"[S]tate courts possess the inherent power to regulate admission to the bar. See *Leis* v. *Flynt,* 439 U.S. 438, 443, 99 S. Ct. 698, 58 L. Ed. 2d 717 (1979); *State* v. *Reed,* 174 Conn. 287, 293, 386 A.2d 243 (1978). Included within the general regulatory power is the right to establish guidelines for determining when an out-of-state attorney should be admitted pro hac vice. *Leis* v. *Flynt,* supra; *State* v. *Reed,* supra. Practice Book § 24 sets out the guidelines for Connecticut judges to follow when reviewing an application for admission pro hac vice: The application must be sponsored by an attorney licensed to practice in this state, who will assume 'full responsibility' for the applicant's conduct. The applicant must be an attorney in 'good standing at the bar of another state,' and there must be good cause shown for admission. The decision to grant or deny an application to appear pro hac vice rests within the sound discretion of the court. See *State* v. *Reed,* supra, 291–94; *Silverman* v. *St. Joseph's Hospital,* [supra,]; see also *Silverman* v. *Browning,* 414 F. Sup. 80 (D. Conn.), aff'd, 429 U.S. 876, 97 S. Ct. 228, 50 L. Ed. 2d 162 (1976)." *Enquire Printing & Publishing Co.* v. *O'Reilly,* 193 Conn. 370, 373–74, 477 A.2d 648 (1984). The court must not abuse its discretionary powers, however, and reject the petition without giving due consideration to the petitioner's request. "The right to have counsel of one's own choice, although not absolute, is important enough to require a legitimate state interest before a person can be deprived of that right. See *State* v. *Rapuano,* 192 Conn. 228, 232–33, 471 A.2d 240 (1984); *United States* v. *Curcio,* 694 F.2d 14, 23 (2d Cir. 1982); see also *United States ex rel. Spurlark* v. *Wolff,* 683 F.2d 216, 220 (7th Cir. 1982). In fact, Practice Book § 24 embodies this constitutional mandate, requiring the court to consider the 'facts or circumstances affecting the personal or financial welfare of the client,' when reviewing the application. This limited scope of inquiry

strikes the balance between the state's interest in regulating attorneys seeking to be admitted to practice pro hac vice and the litigant's interest in obtaining counsel of his own choice. In this period of greater mobility among members of the bar and the public, and the corresponding growth in interstate business, a court should reluctantly deny an application to appear pro hac vice. A litigant's request to be represented by counsel of his choice, when freely made, should be respected by the court, unless some legitimate state interest is thwarted by admission of the out-of-state attorney." *Enquire Printing & Publishing Co.* v. *O'Reilly,* supra, 374–75.

There is a legitimate state interest in granting the trial court the power to control its own docket. "Overcrowded dockets have become a major problem challenging the ability of the courts of this state and elsewhere to dispense justice. It is well known that justice delayed is justice denied. In order to fulfill our responsibility of dispensing justice we in the judiciary must adopt an effective system of caseflow management. . . . Judges must be firm and create the expectation that a case will go forward on the specific day that it is assigned. In order to dispose of our cases in a fair, timely, and efficient manner, everyone involved must be present on time, prepared, and ready to go forward. Because both courtrooms and judges are necessarily limited in number, burgeoning caseloads require that efficient use be made of the available space and judicial time. Careful calendar control is one proven method of increasing the number of case dispositions in the system." *In re Mongillo,* 190 Conn. 686, 690–91, 461 A.2d 1387 (1983).

This case was returned to court in August, 1979, and was claimed to the trial list on May 23, 1980. It was almost six years old at the time of dismissal and certainly one of the oldest cases on the docket. It had been

assigned for trial two weeks earlier and, at the plaintiff's request, was continued by the court for trial on January 31, 1985. Up to January 18, 1985, Berger had been the plaintiff's counsel in this case. Sometime during the ensuing two week interval, the plaintiff and Berger had a parting of the ways and the attorney was dismissed. On January 28, 1985, Strauss, a Connecticut attorney, entered a general appearance for the plaintiff. On the day of trial, January 31, 1985, Strauss filed a petition for admission of counsel pro hac vice, advising the court that out-of-state counsel was not available since he was on trial in New York. The out-of-state counsel was a long-time personal friend of the plaintiff and had been a law partner of the plaintiff's husband for a number of years. He was not unknown to the plaintiff throughout the nearly six year life span of this case. He was available to the plaintiff for a long period of time and it was only at the very last minute, when the case was set for trial, that the pro hac vice request was made. Because of his unavailability, however, a granting of the request would have necessitated further continuance of the case. The defendants promptly objected to a continuance and the court, exercising its duty to maintain an orderly caseflow policy, denied the request, stating, "[a]nd I think it was clear to counsel at that time, or should have been, that the matter was continued to January 31st to go forward, and that it would go forward at that time and I can see no reason whatsoever at this point why anything should delay it unless, obviously, some extraordinary circumstances were developed, but I don't see that that is the case, so The Court is ready to proceed."

The court, under the circumstances of this case, clearly acted within its discretion to deny the plaintiff's application for admission pro hac vice of New York counsel in order to maintain a legitimate state interest, that of docket control and expeditious caseflow management.

## II

The plaintiff next claims that the court erred in granting the defendant's oral motion to dismiss made pursuant to Practice Book § 251. She claims that where a motion is made by a party under § 251, it must also be made in compliance with § 196.[3] Those sections require that the motion be in writing and that two weeks notice be given. Because the motion was not properly brought, she argues that the trial court had no jurisdiction to dismiss the case.

When the defendants filed their oral motion to dismiss, they did not comply with the rules requiring that motions made by parties under § 251 be in writing. See Practice Book §§ 196 and 251. Section 251 also states, however, that: "If a party shall fail to prosecute an action with reasonable diligence, the court may . . . *on its own motion,* render a judgment dismissing the action with costs. At least two weeks notice shall be required *except in cases appearing on an assignment list for final adjudication.*" (Emphasis added.) We conclude that because the court had the authority to dismiss the case on its own motion, the defendants' failure to comply with the applicable practice book provisions is inconsequential.

Subject matter jurisdiction, according to Black's Law Dictionary (5th Ed.), "refers to [a] court's competence to hear and determine cases of the general class to which [the] proceedings in question belong; the power to deal with the general subject involved in the action."

---

[3] Practice Book § 196 provides: "Every motion, request, application or objection directed to pleading or procedure, unless relating to procedure in the course of a trial, shall be in writing and shall, except in the case of a request, have annexed to it a proper order, and a proper order of notice and citation, if one or both are necessary. Such motion, request, application or objection shall be served on all parties as provided in Sec. 120 and, when filed, the fact of such service shall be endorsed thereon."

See *Standard Oil Co.* v. *Montecatini Edison S.p.A.*, 342 F. Sup. 125, 129–30 (D. Del. 1972); *Japan Gas Lighter Assn.* v. *Ronson Corporation,* 257 F. Sup. 219, 224 (D.N.J. 1966). When the plaintiff's complaint was filed, the court acquired jurisdiction over the subject matter of the case. A defect in the form of the motion to dismiss did not deprive the court of its jurisdiction to dismiss the case. *Brookfield* v. *Candlewood Shores Estate, Inc.,* 200 Conn. 1, 4, 509 A.2d 489 (1986); *Telesco* v. *Telesco,* 187 Conn. 715, 719–20, 447 A.2d 752 (1982); *LaBow* v. *LaBow,* 171 Conn. 433, 440, 370 A.2d 990 (1976). The proper focus is therefore not, as the defendants suggest, on the jurisdiction of the court to act, but instead on the propriety of the court's action under the Practice Book.

The court made it very clear in its remarks that the orderly process of caseflow and court management was a very important factor in its decision. On January 31, 1985, the date for trial, the court stated the following: "[This case] was previously called in for trial, I believe, on January 18th, 1985 before Judge West and at that time, plaintiff requested that the matter be continued because certain discovery information which plaintiff claimed she had a need for had not been provided and Judge West, in an unusual response to a request for a continuance of the case which was scheduled for trial, did show, it seems to me, consideration to plaintiff and continued the matter to allow the information to be provided. I'm sure all counsel here know that in any case which is scheduled for trial, it is expected that the matter will go forward at the time that it is called in for trial. It's not expected that the matter will be continued and I indicate this for the purpose of indicating to counsel and for the record that, I think, plaintiff was shown extraordinary consideration . . . . I can see no reason whatsover at this point why anything should delay it unless, obviously, some extraordinary circumstances

were developed, but I don't see that that is the case, so The Court is ready to proceed."

The court had the responsibility, duty and power to see that the case proceeded expeditiously. The continuance previously granted was for two weeks. On the day the case was reset for trial, the plaintiff was under an obligation to proceed. Her attempt to further delay the commencement of trial by requesting admission pro hac vice of unavailable counsel was unfair to all concerned. The out-of-state counsel had apparently been available to represent her in the case since its inception, but it was not until the morning of the trial (six years later) that she attempted to have his appearance filed. She had counsel of record, who refused to participate even in jury selection notwithstanding the court's request. The actual presentation of evidence would not have commenced until the following week. In spite of the court's obvious determination to proceed, Strauss refused to participate and left little alternative to the court but to take appropriate action and dismiss the case in order to advance the oft repeated caseflow principles noted above. See *Gionfrido* v. *Wharf Realty, Inc.*, 193 Conn. 28, 33–34, 474 A.2d 787 (1984); *In re Mongillo,* supra, 690–91.

The plaintiff alleges that even though the court had the power to dismiss the matter suo motu under Practice Book § 251, it, in fact, dismissed the same pursuant to the defendants' motion under Practice Book §§ 251 and 274 which was error because the defendants had not complied with § 196. The requirement that parties file their motions in writing is to ensure that the opposing party has written notice of the motion to dismiss. When a case has been set down on an assignment list for final adjudication, however, § 251 provides that the court may, on its own motion, render a judgment dismissing the action without further notice. Since the court had subject matter jurisdiction over the case, and

had the power to dismiss suo motu for failure of the plaintiff to proceed when the case was called, it could so act, despite the defendants' failure to file a written motion to dismiss pursuant to § 196. The fact that the court's final orders were based upon mistaken grounds does not defeat its correct conclusion. "Where the trial court reaches a correct decision but on mistaken grounds, this court has repeatedly sustained the trial court's action if proper grounds exist to support it." *Morris* v. *Costa,* 174 Conn. 592, 597–98, 392 A.2d 468 (1978); *DiMaggio* v. *Cannon,* 165 Conn. 19, 24, 327 A.2d 561 (1973). It is obvious that the trial court had the power to grant the dismissal, suo motu, under § 251, to advance caseflow principles. The remarks in court signified the same. Thus its actions were correct but were enunciated erroneously. This court is not required to reverse a ruling of the trial court which reached a correct result, albeit for a wrong reason. *Favorite* v. *Miller,* 176 Conn. 310, 317, 407 A.2d 974 (1978).

## III

The plaintiff further claims that the trial judge had personal knowledge of disputed evidentiary facts concerning the proceeding which may have prejudiced her against the plaintiff, and thus should have disqualified herself. The issue of disqualification is raised for the first time on appeal. The record is devoid of any suggestion of actual impropriety or bias on the part of the court. Because the plaintiff cannot raise the issue of disqualification for the first time on appeal, we decline to review it. *Timm* v. *Timm,* 195 Conn. 202, 205, 487 A.2d 191 (1985).

## IV

The plaintiff has raised a number of other issues on appeal involving, among other things, the constitutionality of the dismissal. The defendants argue that these issues were not raised below and therefore are not

reviewable. See Practice Book § 3063. The plaintiff responds that she raised the claims with the trial court by means of a brief filed pursuant to Practice Book § 3060C in which she sought an articulation from the trial court on its decision to dismiss her lawsuit. We conclude that § 3060C is inapplicable and do not review these remaining issues.

Practice Book § 3060B requires that: "Except in small claims actions and as provided in Sec. 3060C, when rendering judgments in trials to the court, the court shall, either orally or in writing, state its decision on the issues . . . . The court shall include in its decision its conclusion as to each claim of law raised by the parties. If oral, the decision shall be . . . transcribed and the transcript of the decision shall be signed by the trial judge." The trial court in this case rendered an oral decision and signed the transcript in compliance with § 3060B. Section 3060C (a) states that an oral or written decision is not required in any dismissal under Practice Book § 251. Section 3060C (b) provides that: "Within fourteen days from the filing of an appeal from a dismissal under Sec. 251 . . . *in which an oral or written decision has not been made* pursuant to paragraph (a), each party to the appeal shall file a brief with the court discussing the legal and factual issues in the matter. The court shall file a written memorandum of decision stating its decision on the issues in the matter and the factual basis of its decision within fourteen days after briefs have been filed by the parties." (Emphasis added.) Section 3060C (b) is clearly only an alternate procedure to obtain the court's explanation for the dismissal, in the instance where the court does not satisfy the requirements of § 3060B. The trial court's compliance in this case with the requirements of § 3060B rendered § 3060C inapplicable to this case. Because § 3060C does not apply, the claims raised by the plaintiff are not properly before the court since they

276

were not raised at the time the trial court rendered its decision. Practice Book § 3063.

There is no error.

In this opinion the other justices concurred.