BURGER AND BURGER, INC. *v.*
THOMAS B. MURREN ET AL.
(12759)

THOMAS B. MURREN ET AL. *v.*
BURGER AND BURGER, INC.
(12760)

PETERS, C. J., HEALEY, SHEA, DANNEHY and CALLAHAN, Js.

Argued December 10, 1986—decision released March 24, 1987

*Bernard Green,* for the appellant (Thomas B. Murren).

*William B. Barnes,* for the appellee (Burger & Burger, Inc.).

CALLAHAN, J. The dispositive issue on this appeal is whether the granting of a motion to disqualify counsel in a civil case is an appealable final judgment. The procedural and factual history of this case is undisputed. After a contract dispute arose, the plaintiff in the first case, Burger & Burger, Inc. (Burger), an insurance company, commenced an action against the defendants, Thomas Murren, a former agent of the company, and Murphy & Murphy, Inc., Murren's present employer.

In a separate action, Murren and Murphy & Murphy, Inc., brought a countersuit against Burger. On April 12, 1985, Burger moved to disqualify Murren's counsel, Green & Gross, P.C., in each of these cases because one of the attorneys associated with Green & Gross, P.C., had formerly represented Burger in a number of other matters. The trial court, *Spear, J.*, granted the motions on May 16, 1985, and these appeals followed. On July 18, 1985, in considering a motion to combine the appeals, we raised the issue, sua sponte, of whether the trial court's order disqualifying counsel is a final judgment from which an appeal may be taken. We conclude that such an order does not constitute a final judgment, and that the appeals must accordingly be dismissed for lack of jurisdiction.

Under current law in Connecticut, the denial of a motion to disqualify an attorney is not considered an appealable final judgment, but the granting of such motion *is* considered immediately appealable. *State* v. *Rapuano,* 192 Conn. 228, 229 n.1, 471 A.2d 240 (1984); *Goldenberg* v. *Corporate Air, Inc.,* 189 Conn. 504, 506, 457 A.2d 296 (1983). "A decision of this court is a controlling precedent until overruled or qualified. *Daury* v. *Ferraro,* 108 Conn. 386, 389, 143 A. 630 [1928]." *Herald Publishing Co.* v. *Bill,* 142 Conn. 53, 61–62, 111 A.2d 4 (1955); see *Taylor* v. *Robinson,* 196 Conn. 572, 578, 494 A.2d 1195 (1985) (*Peters, C. J.,* dissenting), appeal dismissed, 475 U.S. 1002, 106 S. Ct. 1172, 89 L. Ed. 2d 291 (1986); *State* v. *Castonguay,* 194 Conn. 416, 435, 481 A.2d 56 (1984). "[A] court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it." *Herald Publishing Co.* v. *Bill,* supra, 62; W. Maltbie, Connecticut Appellate Procedure pp. 434–35. We are persuaded that such reasons and logic exist in this case.

At the time of our decision in *Rapuano,* federal precedent was divided on the question of the appealability

of the granting of a motion to disqualify, in either civil or criminal cases. See, e.g., *Kahle* v. *Oppenheimer & Co.*, 748 F.2d 337, 338–39 (6th Cir. 1984); *Gibbs* v. *Paluk*, 742 F.2d 181, 184 (5th Cir. 1984); *Interco Systems, Inc.* v. *Omni Corporate Services, Inc.*, 733 F.2d 253, 255 (2d Cir. 1984); *Armstrong* v. *McAlpin*, 625 F.2d 433, 440–41 (2d Cir. 1980), vacated on other grounds and remanded, 449 U.S. 1106, 101 S. Ct. 911, 66 L. Ed. 2d 835 (1981). The recent decision of the United States Supreme Court in *Richardson-Merrell, Inc.* v. *Koller*, 472 U.S. 424, 105 S. Ct. 2757, 86 L. Ed. 2d 340 (1985), has, however, resolved this question on the federal level by concluding that disqualification orders in civil cases are not appealable final judgments. Cf. *Flanagan* v. *United States*, 465 U.S. 259, 104 S. Ct. 1051, 79 L. Ed. 2d 288 (1984) (disqualification orders in criminal cases are not appealable final judgments). In view of this recent change, we have decided to reconsider our position.

It is established that, "except in special cases, such as appeals upon reservations; *State* v. *Sanabria*, 192 Conn. 671, 681–85, 474 A.2d 760 (1984); or upon certification pursuant to General Statutes § 52-265a; *Laurel Park, Inc.* v. *Pac*, 194 Conn. 677, 678–79 n.1, 485 A.2d 1272 (1984); the jurisdiction of this court is restricted to appeals from judgments that are final. General Statutes § 52-263; Practice Book § 3000 (now § 4000); *Melia* v. *Hartford Fire Ins. Co.*, 202 Conn. 252, 255, 520 A.2d 605 (1987); *Doublewal Corporation* v. *Toffolon*, 195 Conn. 384, 388–89, 488 A.2d 444 (1985)." *Schieffelin & Co.* v. *Department of Liquor Control*, 202 Conn. 405, 408–409, 521 A.2d 566 (1987). The policy concerns underlying the final judgment rule are to discourage piecemeal appeals and to facilitate the speedy and orderly disposition of cases at the trial court level. See *State* v. *Powell*, 186 Conn. 547, 551, 442 A.2d 939, cert. denied sub nom. *Moeller* v. *Connecticut*, 459 U.S. 838, 103 S. Ct. 85, 74 L. Ed. 2d 80 (1982).

An order disqualifying counsel in a civil case, however, is not a final judgment on the merits of the litigation; it is an interlocutory order of the trial court. Such interlocutory orders are considered final for purposes of appeal in two narrow circumstances: "(1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." *State* v. *Curcio,* 191 Conn. 27, 31, 463 A.2d 566 (1983); *Schieffelin & Co.* v. *Department of Liquor Control,* supra, 409; *Melia* v. *Hartford Fire Ins. Co.,* supra, 257; *Daginella* v. *Foremost Ins. Co.,* 197 Conn. 26, 30–31, 495 A.2d 709 (1985). We conclude that an order disqualifying counsel in a civil case neither terminates a separate and distinct proceeding nor concludes the rights of the parties so that further proceedings cannot affect them.

The first prong of the *Curcio* test, termination of a separate and distinct proceeding, requires that the order being appealed from be severable from the central cause of action so that the main action can "proceed independent of the ancillary proceeding." *State* v. *Parker,* 194 Conn. 650, 654, 485 A.2d 139 (1984). Assessment of the disqualification decision will, however, in most cases, turn on the particular factual situation of the case. *Richardson-Merrell, Inc.* v. *Koller,* supra, 437–39; *Firestone Tire & Rubber Co.* v. *Risjord,* 449 U.S. 368, 374, 101 S. Ct. 669, 66 L. Ed. 2d 571 (1981); see also *Kahle* v. *Oppenheimer & Co.,* supra, 339, citing *Coopers & Lybrand* v. *Livesay,* 437 U.S. 463, 98 S. Ct. 2454, 57 L. Ed. 2d 351 (1978). As the United States Supreme Court indicated in *Richardson-Merrell, Inc.* v. *Koller,* supra, 437, even if some orders disqualifying counsel are separable from the merits of the litigation, many are not. "Orders disqualifying attorneys on the ground that they should testify at trial, for example, are inextricable from the merits because

they involve an assessment of the likely course of the trial and the effect of the attorney's testimony on the judgment. *Kahle* v. *Oppenheimer & Co.,* [supra, 339]. Appellate review of orders disqualifying counsel for misconduct may be entwined with the merits of the litigation as well. If reversal hinges on whether the alleged misconduct is 'likely to infect future proceedings' . . . courts of appeals will often have to review the nature and content of those proceedings to determine whether the standard is met."*Richardson-Merrell, Inc.* v. *Koller,* supra, 439. Similarly, as the brief of Burger points out, disqualification orders based upon Canon 4[1] of the Code

---

[1] Relevant to this appeal are the following sections of the Code of Professional Responsibility prior to their amendment effective October 1, 1986:

"EC 4-1   Both the fiduciary relationship existing between lawyer and client and the proper functioning of the legal system require the preservation by the lawyer of confidences and secrets of one who has employed or sought to employ him. A client must feel free to discuss whatever he wishes with his lawyer and a lawyer must be equally free to obtain information beyond that volunteered by his client. A lawyer should be fully informed of all the facts of the matter he is handling in order for his client to obtain the full advantage of our legal system. It is for the lawyer in the exercise of his independent professional judgment to separate the relevant and important from the irrelevant and unimportant. The observance of the ethical obligation of a lawyer to hold inviolate the confidences and secrets of his client not only facilitates the full development of facts essential to proper representation of the client but also encourages laypersons to seek early legal assistance."

"EC 4-2   The obligation to protect confidences and secrets obviously does not preclude a lawyer from revealing information when his client consents after full disclosure, when necessary to perform his professional employment, when permitted by a Disciplinary Rule, or when required by law. Unless the client otherwise directs, a lawyer may disclose the affairs of his client to partners or associates of his firm. It is a matter of common knowledge that the normal operation of a law office exposes confidential professional information to nonlawyer employees of the office, particularly secretaries and those having access to the files; and this obligates a lawyer to exercise care in selecting and training his employees so that the sanctity of all confidences and secrets of his clients may be preserved. If the obligation extends to two or more clients as to the same information, a lawyer should obtain the permission of all before revealing the information. A lawyer must always be sensitive to the rights and wishes of his client and act scrupulously in the making of decisions which may involve the

of Professional Responsibility, which imposes on counsel the obligation to preserve the confidences and secrets of a client, are not separable because they arise out of the trial court's supervision of the main action. The trial court must analyze the facts of the case before it, and the past proceedings between the parties, to determine whether an attorney has violated an ethical rule. See *Goldenberg* v. *Corporate Air, Inc.,* supra, 510–11.

disclosure of information obtained in his professional relationship. Thus, in the absence of consent of his client after full disclosure, a lawyer should not associate another lawyer in the handling of a matter; nor should he, in the absence of consent, seek counsel from another lawyer if there is a reasonable possibility that the identity of the client or his confidences or secrets would be revealed to such lawyer. Both social amenities and professional duty should cause a lawyer to shun indiscreet conversations concerning his clients."

"EC 4-4 The attorney-client privilege is more limited than the ethical obligation of a lawyer to guard the confidences and secrets of his client. This ethical precept, unlike the evidentiary privilege, exists without regard to the nature or source of information or the fact that others share the knowledge. A lawyer should endeavor to act in a manner which preserves the evidentiary privilege; for example, he should avoid professional discussions in the presence of persons to whom the privilege does not extend. A lawyer owes an obligation to advise the client of the attorney-client privilege and timely to assert the privilege unless it is waived by the client."

"EC 4-6 The obligation of a lawyer to preserve the confidences and secrets of his client continues after the termination of his employment. Thus a lawyer should not attempt to sell a law practice as a going business because, among other reasons, to do so would involve the disclosure of confidences and secrets. A lawyer should also provide for the protection of the confidences and secrets of his client following the termination of the practice of the lawyer, whether termination is due to death, disability, or retirement. For example, a lawyer might provide for the personal papers of the client to be returned to him and for the papers of the lawyer to be delivered to another lawyer or to be destroyed. In determining the method of disposition, the instructions and wishes of the client should be a dominant consideration."

"DR 4-101 . . . . (B) Except when permitted under DR-4-101 (C), a lawyer shall not knowingly:

"(1) Reveal a confidence or secret of his client.

"(2) Use a confidence or secret of his client to the disadvantage of the client.

"(3) Use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure."

We conclude, therefore, that a disqualification order cannot be considered to be "separate and distinct" from the main action. The fact that the practical effect of an appeal from such an order would be to interrupt the trial on the merits; Practice Book § 4046 (formerly § 3065); see *Richardson-Merrell, Inc.* v. *Koller*, supra, 434; demonstrates that the appeal is not severable from the main action. As the United States Supreme Court stated in *Richardson-Merrell, Inc.* v. *Koller*, supra, even if the appellate court failed to impose a stay pending the determination of the appeal, "it would take an intrepid . . . [trial court] Judge to proceed to trial with alternate counsel while her decision disqualifying an attorney is being examined . . . ."

The first prong of the *Curcio* test not having been satisfied, we next consider whether the order so concludes the rights of the parties that further proceedings cannot affect them. *State* v. *Curcio*, supra, 31. Our inquiry under this part of the *Curcio* test is not whether Murren has a right which has been injured, but whether that right can be affected by later trial level proceedings, or by an appeal from a final judgment on the merits. *Daginella* v. *Foremost Ins. Co.*, supra, 31–33. An order granting a motion for disqualification does not conclude the rights of the parties. " 'The parties [are] still in court; the issues in the case [are] still open and [may] be fully litigated . . . .' *Beach* v. *Beach Hotel Corporation*, 115 Conn. 708, 163 A. 416 (1932)." *Franchi* v. *Farmholme, Inc.*, 191 Conn. 201, 209, 464 A.2d 35 (1983). As mentioned previously, an order disqualifying counsel is related factually to the cause of action involved, and therefore events which unfold during trial may have a profound effect on assessing the trial court's decision. Furthermore, the party whose attorney has been disqualified may prevail on the merits at trial and receive a favorable judgment, thereby obviating the need to appeal.

Murren argues, however, that further proceedings would not affect the decision because it would be virtually impossible to establish harmful error from an order disqualifying counsel. He argues that while such harm may readily be shown where a motion to disqualify counsel has been denied, it would be an almost insurmountable burden to establish prejudice on an appeal from the granting of a motion to disqualify.

Although we decline to set forth at this time the standard of review in an appeal from a final judgment where error is claimed in the granting of a disqualification order, we do recognize the problems inherent in requiring a litigant to establish prejudice on appeal. Demonstrating that the outcome of a trial has been affected by an erroneous disqualification of counsel rather than by the other "myriad variables present in civil litigation" concededly would impose a difficult burden on a losing litigant. *Richardson-Merrell, Inc.* v. *Koller,* supra, 443 (Stephens, J., dissenting). This factor, coupled with the fact that the right to counsel of one's choice, although not absolute, is a fundamental premise of our adversary system; id., 441 (Brennan, J., concurring); *Herrman* v. *Sumner Plaza Corporation,* 201 Conn. 263, 268, 513 A.2d 1211 (1986); *Enquire Printing & Publishing Co.* v. *O'Reilly,* 193 Conn. 370, 374, 477 A.2d 648 (1984); may well require us to place the burden of disproving prejudice on the party who has been advantaged by an erroneous disqualification. Cf. *Henderson* v. *Department of Motor Vehicles,* 202 Conn. 453, 458–59, 521 A.2d 1040 (1987); *Aillon* v. *State,* 168 Conn. 541, 547, 363 A.2d 49 (1975). We note, however, that the question of who will have the burden of demonstrating prejudice goes "more to the issue of the showing required to reverse a final judgment than to whether a disqualification order should be subject to

immediate appeal." *Richardson-Merrell, Inc.* v. *Koller,* supra, 438; see *Flanagan* v. *United States,* supra, 268–69.

The recent decisions of this court have emphasized that the statutory final judgment rule serves the important public policy of discouraging the delays and inefficiencies that attend piecemeal appeals. See, e.g., *Melia* v. *Hartford Fire Ins. Co.,* supra, 258 (interlocutory appeal from disclosure order not allowed); *In re Juvenile Appeal (85–AB),* 195 Conn. 303, 312, 488 A.2d 778 (1985) (interlocutory appeal from denial of youthful offender status not allowed). These decisions recognize that the allowance of interlocutory appeals must be very narrowly prescribed. "Immediate review of every trial court ruling, while permitting more prompt correction of erroneous decisions, would impose unreasonable disruption, delay, and expense. It would also undermine the ability of [trial court] judges to supervise litigation." *Richardson-Merrell, Inc.* v. *Koller,* supra, 430. For these reasons, this court has expressed the preference that some erroneous trial court decisions go uncorrected until appeal after judgment rather than have litigation disrupted by piecemeal appeals. We conclude that the overall significance of any prejudice that may arise at trial from an erroneous disqualification order is far outweighed by the delay in the progress of cases in the trial court that would be likely to result from interlocutory appeals of orders granting motions to disqualify. The right to be represented by counsel of one's own choice is not irretrievably lost absent an immediate appeal. It can be vindicated upon reversal of the judgment on appeal. See *In re Juvenile Appeal (85–AB),* supra, 311; *State* v. *Parker,* 194 Conn. 650, 658–59, 485 A.2d 139 (1984); *State* v. *Longo,* 192 Conn. 85, 88, 469 A.2d 1220 (1984).

We conclude, therefore, that the order granting Burger's motions to disqualify is not a final judgment

and may not be immediately appealed. To the extent that *State* v. *Rapuano,* 192 Conn. 228, 471 A.2d 240 (1984), and *Goldenberg* v. *Corporate Air, Inc.,* 189 Conn. 504, 457 A.2d 296 (1983), are inconsistent with this conclusion, they are overruled.

The appeals are dismissed.

In this opinion the other justices concurred.