[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum of Decision
The defendant has moved to admit Attorneys T. Barry Kingham and Miriam K. Harwood[1] pro hac vice to represent the defendant in the trial of this case. The plaintiff opposes the motion, claiming that the Firm is disqualified from representing the defendant on the grounds that said representation would violate the Rules of Professional Conduct, Rule 1.9 and Rule 3.7.[2]
CT Page 2534
The relevant facts in this case, as they pertain to the subject motion, are these. In 1993 or 1994 the plaintiff and the defendant. Dr. Reibel, developed a concept for a computer-based case management system for cancer, to be distributed world-wide through a series of international licenses. A United Kingdom Company, Managed Health Systems, Ltd. ("MHS"), was formed and a shareholders agreement between the plaintiff Dr. Lane and the defendant Dr. Reibel was entered into under date of April 1, 1994. A letter of understanding was executed by the parties dated May 6, 1994. Pursuant to these two documents, the parties agreed that Dr. Reibel would loan up to 1.5 million dollars to MHS as initial financing, and would receive Seventy-five (75%) percent of the ownership of that company, while Dr. Lane would receive Twenty-five (25%) percent. It was provided that employment agreements would be entered into between MHS and the two stockholders. As to any non-UK enterprises dealing with managed health care, ownership would be on a 51%-49% basis in favor of Dr. Reibel, unless Dr. Reibel were to finance any of such non-UK ventures, in which case ownership interest would be negotiated between the parties. The parties were both directors of MHS and Dr. Lane was president and chief executive officer of the company. The Firm represented MHS in the formation of the company with the consent of Dr. Lane, and proceeded to advise the company on an ongoing basis, through Dr. Lane, on various aspects of operating the company business.
The Firm, Dr. Reibel's counsel for many years, continued to represent him as well as the non-UK entities which were formed. In the negotiation of both the shareholders' agreement and the letter of understanding, Dr. Lane was represented by his own independent counsel.
Having invested some $500,000 into the non-UK entity, Dr. Reibel chose to renegotiate with Dr. Lane the latter's percentage interest pursuant to the letter of understanding of May 6, 1994. In a meeting between the parties in September 1995, Dr. Reibel broached the topic and the meeting became hostile and adversarial. Subsequent attempts to negotiate an amicable agreement by separate counsel for the parties (Attorney Beth Hanson for the plaintiff and the Firm for the defendant) were unsuccessful and this lawsuit followed.
It is now settled in Connecticut that to grant or deny an application to appear pro hac vice rests within the sound CT Page 2535 discretion of the court. Herrmann v. Summer Plaza Corporation,201 Conn. 263, 268, 513 A.2d 1211 (1986); State v. Reed,174 Conn. 287 292, 386 A.2d 243 (1978).
The basic premise upon which the plaintiff's objection to defendant's pro hac vice motion is based is that the plaintiff is a client or a former client of the Firm and thus the Firm and all its lawyers are precluded from representing the defendants in this action.[3]
It is clear that Rule 1.7 is a conflict of interest rule which prohibits a lawyer from representing a client if the representation of that client would be directly adverse to another client. This rule is inapplicable here because in the hearing conducted by the court there was no evidence presented that the plaintiff, Dr. Lane, is presently or at the commencement of this suit was, a client of the Firm. See Prime Equities, Inc.v. DiScala, Judicial District of Stamford/Norwalk at Stamford, Docket No. CV940141542 March 28, 1995, Lewis, J.).
Nonetheless, the plaintiff claims that Dr. Lane is a former client of the Firm, and therefore invokes Rule 1.9 to substantiate his objections. Accordingly, the court must determine whether the plaintiff is a former client of the Firm.[4] The plaintiff advances several reasons why he must be so considered. The first three reasons deal with specific conduct of the Firm.
Firstly, the plaintiff contends that a certain tax memorandum prepared by the Firm addressed tax advice concerning the structure of off-shore corporations and corporations set up in foreign countries, which advice affected Dr. Lane. At this juncture, it might well be pointed out that the plaintiff at no time was personally billed or paid for any legal services by the Firm. So in the case of the tax memorandum, the plaintiff neither requested it nor was it sent to him by the Firm, nor was he apparently even aware of its existence until the defendant forwarded a copy of it to him. Furthermore, Dr. Lane never acted upon the memorandum by discussing it with anyone at the Firm, or with anyone else for that matter. The court views the mention of the plaintiff's name several times in the memorandum as not significant. Dr. Lane is not a former client of the Firm because of the tax memorandum.
Next, the plaintiff seeks to be viewed as a former client of CT Page 2536 the Firm because of some advice given on copyrights. It is clear though, that this advice was not given by the Firm, but by another lawyer to whom the questions were referred, and that the advice concerned only MHS and not Dr. Lane. The plaintiff did not become a client of the Firm as a result of these activities.
The third reason advanced by Dr. Lane why he was once a client of the Firm, is that he received advice by Attorney Roger Barth of the Firm concerning the possible use of "sprinkling trusts" when planning his estate. A meeting did take place between the plaintiff and Mr. Barth, apparently arranged by the defendant, at a hotel lounge in Washington D.C. This meeting took place subsequent to the meeting of September 30, 1995 between the parties. There is no evidence that Attorney Barth gave any specific advice to Dr. Lane concerning the creation of trusts, but rather he told the plaintiff that if the plaintiff were intrusted, he would refer him to the appropriate lawyer in the Firm to assist him. The plaintiff never spoke to any other lawyer about the issue, did not retain the Firm, and apparently never followed up on the discussion. He was not billed for his conversation with Mr. Barth. Also, importantly, estate planning questions which might have been addressed by any representative of the Firm were not the same or substantially related to the issue in this case, and thus are not grounds for disqualification. Rules of Professional Conduct. Rule 1.9(a).
In addition to the specific conduct about which the plaintiff complains, he seeks to disqualify the firm because of a "clientlike relationship" primarily based upon the Firm's representation of MHS of which Dr. Lane was a director, shareholder and officer. However, representing a corporation, even a small close corporation with only a few shareholders and directors ". . . does not inherently mean also acting as counsel to the individual director-shareholders. Rather, the question must be determined on the individual facts of each case." Bobbittv. Victorian House, Inc., 545 F. Sup. 1124, 1126 (1982). The question is whether the party seeking disqualification could reasonably have thought the attorney was acting as his lawyer. Id. ftn. 1, citing Westinghouse Electric Corp. v. Kerr-McGeeCorp., 580 F.2d 1311, 1318-20 (1978). The Firm's representation of MHS did not automatically make it counsel for Lane, a minority shareholder. Simply because advice to MHS might have enured to the benefit of the plaintiff does not make the Firm the plaintiff's attorneys. CT Page 2537
From all the evidence in this case, the court finds that Dr. Lane could not reasonably have thought the Firm was acting as his lawyer at any time.
With respect to a claimed violation of Rule 3.7[5], there is insufficient evidence of any necessity for either party to call Attorney Barth or any other of the Firm's lawyers as witnesses in this case.
For the foregoing reasons, and because the defendant has sustained his burden of proof, the motion to admit Attorneys Kingham and Harwood pro hac vice is granted, and the objection thereto is overruled.
D'Andrea, J.