[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO DISQUALIFY
This is a motion to disqualify the law firm representing the defendant estate and estate fiduciary in a suit against the estate by the plaintiff caretaker of the decedent during his final years. In the first count, the suit claims that the daughter of the decedent who is the estate fiduciary is wrongfully preventing the plaintiff from receiving certain property and money rightfully belonging to her as a result of certain written and verbal agreements of the decedent made with the plaintiff.
The second count, relying on the same factual assertions as the first count, claims the estate fiduciary is interfering with the contractual or financial expectancies of the plaintiff. The final count lies in conversion and claims that the estate fiduciary "has intentionally dispossessed the plaintiff' of the property listed in the first count.
The estate is represented by a long established New London law firm. The motion to disqualify that firm is based on two grounds: (1) the plaintiff represents she intends to call an attorney (in decision he will be referred to as "the attorney") from the firm "since she reasonably believes his testimony is relevant and necessary to a proper determination of the pending suit"; and (2) the attorney's representation of the estate fiduciary in the pending matter is adverse to the interest CT Page 5383 of the decedent on a matter substantially related to the present controversy.
What are the grounds for disqualification advanced by the plaintiff? The plaintiffs brief refers first to Rule 3.7(a) of the Rules. That provision states a lawyer shall not act as an "advocate at a trial" in which he or she is likely to be a necessary witness except where one of three exceptions apply. Any direct problem presented by subsection (a) is avoided by the fact that counsel appearing in court for the defendant estate has represented that the attorney in his firm who will be called as a witness will not be representing the estate in court proceedings. This will avoid the obvious problems presented by a lawyer calling him or herself as a witness before the trier of fact when the same lawyer is presenting the client's case. But this does not answer the request for disqualification made here since, if subsection (b) of § 3.7 of the Rules of Professional Conduct (Rules) applies, the whole firm would be disqualified under Rule 1.10(a).
The issue raised is more exactly presented by subsection (b) of Rule 3.7 which says:
 "(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9."
Before discussing these just-mentioned rules specifically, certain general comments are in order as they relate to disqualification in a situation such as this and the genesis of Rule 3.7. The plaintiff in her brief refers to State v. Rapuano, 192 Conn. 228 (1984), for the general proposition that "whenever counsel for a client reasonably foresees that he will be called as a witness to testify on a material matter, the proper action is for that attorney to withdraw from the case." Id., p. 231. If that were the flat rule and it was read in conjunction with Rule 1.10(a), disqualification would, in fact, be appropriate here. But the case cited relied on Jennings Co. v. DiGenova, 107 Conn. 491 (1928);Rapuano was a 1984 case and the present Rules were adopted in 1986.Connecticut Practice, Vol. 1, Horton Knox make the following observation in their comments to Rule 3.7(b) at page 78:
 "Rule 3.7(b) is a significant and important change. Under the Code, if one member of a firm had to testify, all members of the firm were disqualified. Fletcher v. Plotnick, 12 Conn. L. Trib. No. 19, p. 23 (1986). Rule 3.7(b) eliminates the blanket imputed disqualification which previously existed under the CT Page 5384 Code. The holding in Erwin M. Jennings Co. v. DiGenova, 107 Conn. 491, 141 A. 866 (1928), that the giving of material testimony by the trial attorney's partner violated the Code, should no longer result under this Rule. It is no longer mandatory for a lawyer, upon discovering she must testify on behalf of a client, to seek the services of another attorney and withdraw from the case. If either the lawyer-advocate or the lawyer-witness (both of the same law firm) has a conflict of interest pursuant to Rule 1.7 (General Conflict) or Rule 1.9 (Former Client) the lawyer-advocate may be precluded from the representation under Rule 1.10. However, absent those specific conflict situations, even if a lawyer called to testify, another lawyer from the firm may now try the case."
 (1)
The court will first examine Rule 1.9 to determine whether under that rule disqualification is necessary. That rule reads as follows:
"Rule 1.9 Conflict of Interest: Former Client
A lawyer who has formerly represented a client in a matter shall not thereafter:
 (1) Represent another person in the same or a substantially related matter in which that person's interest are material adverse to the interests of the former client unless the former client consents after consultation; or
 (2) Use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has became generally known."
In deciding on the appropriate application of Rule 1.9, it is necessary to understand its purpose. An important purpose of the Rule is to maintain public confidence in the legal system. It is obvious that such confidence is damaged when lawyers appear to use prior relationships with clients to that client's disadvantage. Rule 1.9 has been described then as "a prophylactic rule to prevent even the potential that a former client's confidences and secrets may be used against . . . the client,"In re Conn. Derivatives Antitrust Litigation, 748 F.2d 157, 162 (CA 3, CT Page 5385 1984); see also Brennan's Inc. v. Brennan's Restaurants, Inc.,590 F.2d 168, 172 (CA 5, 1979); Prisco v. Westgate Entertainment,799 F. Sup. 266, 270 (D. Conn. 1992).
Under Rule 1.9, the plaintiff moving to disqualify has three burdens to meet: (1) she and the attorney who may testify had a prior client attorney relationship; (2) the interests of that attorney's and his firm's current client are adverse to the plaintiff; and (3) the matters involved in the instant case are substantially related to the matters for which DBH previously represented the plaintiff. See Koch v. KochIndustries, 798 F. Sup. 1525, 1532 (D. Kan., 1992); Evans v. ArtekSystems Corp., 715 F.2d 788, 791 (CA 2, 1983); Prisco v. WestgateEntertainment, Inc., supra, p. 269.
In this case, the first two requirements appear to have been met. The attorney in the defendant's law firm represented the plaintiff and the lending institution in a 1998 closing when she bought her house. Also, it is obvious that the defendant's law firm represents a client with an interest adverse to the plaintiff.
The third requirement presents the difficulty. Is the prior representation and anything that could have possibly been learned from the plaintiff substantially related to matters in the instant action? TheKoch case indicates that two distinct versions of the "substantially related" test have emerged, 798 F. Supp. at p. 1533.
 "The first version, adopted by a majority of the courts, compares the `matter' or factual contexts of the prior and present representations. The Tenth Circuit has followed this majority rule. `Substantiality is present if the factual contexts of the two representations are similar or related,' Smith v. Whatcott, 757 F.2d 1098, 1100 (CA 10, 1985).
. . .
 The second version adopted by the Second Circuit imposes a higher standard. A substantial relationship must be "patently clear' and requires disqualification only when the issues involved have been "identical' or `essentially the same,' Government of India v. Cook Industries, Inc., 569 F.2d 737, 741
(CA 2, 1978). . . . The difference between these two versions is with what is examined in the two representations — factual context versus issues and with what is expected from the movant's proof — a similarity CT Page 5386 or relatedness versus a "patently clear' relationship."
Connecticut has adopted the Second Circuit version of the substantial relationship test, Bergeron v. Mackler, 225 Conn. 391, 399; State v.Binkey, 202 Conn. 629, 652 (1987).
To sum up: "A major purpose of Rule 1.9 in addition to the maintenance of public confidence . . . is to limit a lawyer's use of a client's confidential information in subsequent litigation. This purpose refinesthe substantial relationship test to determine what confidentialinformation the attorney was in a position to receive from the formerclient, and what relevance this information could have in the currentcase' Prisco v. Westgate Entertainment, Inc., 799 F. Supp. at p. 270; also see LaSalle National Bank v. County of Lake, 703 F.2d 252, 255 (CA 7, 1983) (emphasis added).
The court cannot find that the attorney's prior representation at a closing prevents his firm from representing his former client's adversary in this litigation even though he may be a witness. It is true that the plaintiff received $25,000 from the decedent which she used to buy that home. But the plaintiff and the attorney testified and corroborated what the pleadings indicate, that this prior transfer of money is not the subject of this litigation. Even if we assume that at some future point in the litigation the receipt of this money and the circumstances motivating the decedent's generosity might have evidentiary value in the prosecution or defense of the explicit allegations of this complaint, based upon the evidence presented at the hearing of this case, the briefs and oral argument, the court does not view this as a problem under the rule. It must be remembered that Rule 1.9 seeks to guard against the use of confidential information from former clients — that is, the whole basis of the notion of client loyalty which the rule seeks to foster. The fact that the decedent gave the plaintiff $25,000 to buy the house is not in any way confidential, but appears to be "generally known," see subsection (2) of Rule 1.9. It is difficult to understand what this attorney could have learned as a result of handling a simple closing that could be said to be of a confidential nature and which could be used in this litigation.
It is also true that the attorney testified that he advised the decedent of the federal and state tax consequences of the gift of money to the plaintiff which led to her purchase of or helped in the purchase of her house. But these conversations were had with the decedent, not the plaintiff, and there has been nothing else presented to indicate any confidences might have been shared between the plaintiff and the attorney regarding this $25,000 gift or how the source of the purchase money would CT Page 5387 have any bearing on the attorney's representation of the client at the closing.[1]
 (2)
The other inquiry that must be made under Rule 3.7 is whether a problem is presented as a result of Rule 1.7. That rule reads as follows:
"Rule 1.7. Conflict of Interest: General Rule
 (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
 (1) The lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
(2) Each client consents after consultation.
 (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless
 (1) The lawyer reasonably believes the representation will not be adversely affected; and
 (2) The client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved."
Horton and Knox in their commentary to Rule 1.7 succinctly state at page 27 that:
 "Subsection (a) prohibits representation of opposing parties in litigation. Simultaneous representation of parties whose interests in litigation may conflict, such as co-plaintiffs or co-defendants, is governed by subsection (b).
Concerning subsection (a), it does not apply since the lawyers sought CT Page 5388 to be disqualified do not now represent the parties who are opposed to each other in this litigation. Similarly, as to subsection (b), there of course is no simultaneous representation of one side of this litigation by the law firm representing the defendant.
The plaintiff emphasizes the third person language in subsection (b) of the rule.
Who can that "third person" possibly be? It would not be the plaintiff since the lawyers and his firm does not owe any "responsibility" to her — that has been established because he does not appear to have garnered any confidential information from the plaintiff. Rule 1.7(b) cannot be used as a vehicle to water down the liberalization of the rules regarding continued representation of a client even though firm member may be a witness, see previous discussion of Rule 3.7 and Rule 1.9.
But perhaps the plaintiff is displaying a concern for the rights of the estate which she is suing. In other words, could the "third person" be the estate itself? The language of subsection (b) would not seem to allow that construction — the universe the subsection envisages is the client on one hand and the third person on the other, they cannot be one and the same.
But let us assume the estate can be the third person or let us assume even if Rule 1.7(b) does not apply a problem can be raised if a lawyer representing a party has adverse information as to that party whether or not learned in a confidential relationship from another client. In some situations, this scenario may present problems for the fair administration of justice. But nothing presented to the court by way of briefing, argument or testimony has raised this specter. Furthermore, counsel for the defendant estate and fiduciary have represented that the fiduciary has no problem with their continued representation and that such representation will not adversely affect their client.
The motion to disqualify is denied.
Corradino, J.