ENQUIRE PRINTING AND PUBLISHING COMPANY, INC.
*v.* JOHN O'REILLY, ET AL.
(11649)

PETERS, HEALEY, PARSKEY, SHEA and GRILLO, Js.

Argued April 6—decision released June 12, 1984

*John O'Reilly,* pro se, the appellant (named defendant).

*Kenneth R. Davis,* for the appellant (defendant The Contemporary Mission, Inc.).

*Burton M. Weinstein,* with whom, on the brief, was *Richard Emanuel,* for the appellee (plaintiff).

SHEA, J. The principal issue raised in this appeal in an action for nonpayment for goods sold and delivered is whether the trial court erred in refusing to permit an attorney, licensed by another state, to be admitted pro hac vice when it was reasonably likely that the attorney would be called as a witness.

The defendants, Rev. John O'Reilly and The Contemporary Mission, appeal from a judgment following a jury verdict for the plaintiff, Enquire Printing Company, Inc., claiming that the court erred (1) in denying the application to have an out-of-state attorney admitted pro hac vice; (2) in dismissing the counterclaims filed by the defendants; and (3) in refusing to set aside the verdict.

The jury could have reasonably found the following facts: Pursuant to two purchase orders[1] made out on Contemporary Mission's stationery, dated October 17, 1977, and December 6, 1977, and signed by the defendant O'Reilly, Enquire Printing sold and delivered to Contemporary Mission printed materials used in Contemporary Mission's mail order business. The printed materials were all delivered by January 31, 1978. Payment for the goods was made in several installments, beginning in November, 1977, and continuing until May 8, 1978. At that time an outstanding balance of $19,938.35 was still due and owing.

Thereafter, Enquire, through its attorney, made demand for payment. William O'Reilly, an attorney licensed to practice in Massachusetts, who represented Contemporary Mission, proposed in a letter dated September 19, 1978, and sent to Enquire's counsel, that his client pay the outstanding balance in a series of four

[1] The defendants claimed that these purchase orders did not reflect the complete agreement between the parties. We construe the jury verdict as rejecting the defendants' claim.

monthly payments.[2] Subsequently, on November 1, 1978,[3] Attorney O'Reilly informed Enquire's counsel by letter that Contemporary Mission was experiencing "cash flow problems" and could not adhere to the agreed-upon schedule. Attorney O'Reilly informed Enquire's counsel that the first payment would be received by late November, 1978. In a letter dated November 28, 1978, however, Attorney O'Reilly told Enquire's counsel that because of a lack of available funds payment would not be forthcoming until January, with the balance being fully paid off by March, 1979.

Enquire refused to agree to any further delay in payment, and filed suit on December 19, 1978.

I

The first claim of error arises out of the following events: On April 9, 1979, local counsel for Contemporary Mission, Kenneth Davis, filed an application to admit William O'Reilly pro hac vice. In his application Davis alleged that William O'Reilly was a member in good standing of the Massachusetts bar, and that good cause existed because of his long standing attorney-client relationship with Contemporary Mission and his special knowledge of the facts of the case. Enquire filed an objection to the application, claiming that William O'Reilly would be a witness in the case.[4] The application was denied on April 20, 1979.

---

[2] The four monthly payments proposed were as follows: September 30, 1978 ($2500), October 30, 1978 ($5000), November 15, 1978 ($5000) and December 15, 1978 ($7438.35).

[3] In an earlier letter, dated October 12, 1979, Attorney O'Reilly stated that because he had not been informed of whether his proposed payment schedule had been accepted until after September 30, 1978, the funds earmarked for the first installment had been used for other purposes. He proposed that Contemporary Mission be allowed to "pick up the payment schedule as of October 30, 1978."

[4] Attorney O'Reilly did in fact testify at trial.

Neither party disputes the fact that state courts possess the inherent power to regulate admission to the bar. See *Leis* v. *Flynt,* 439 U.S. 438, 443, 99 S. Ct. 698, 58 L. Ed. 2d 717 (1979); *State* v. *Reed,* 174 Conn. 287, 293, 386 A.2d 243 (1978). Included within the general regulatory power is the right to establish guidelines for determining when an out-of-state attorney should be admitted pro hac vice. *Leis* v. *Flynt,* supra; *State* v. *Reed,* supra. Practice Book § 24[5] sets out the guidelines for Connecticut judges to follow when reviewing an application for admission pro hac vice: The application must be sponsored by an attorney licensed to practice in this state, who will "assume full responsibility" for the applicant's conduct. The applicant must be an attorney in "good standing at the bar of another state," and there must be good cause shown for admission. The decision to grant or deny an application to appear pro hac vice rests within the sound discretion of the court. See *State* v. *Reed,* supra, 291–94; *Silverman* v. *St. Joseph's Hospital,* 168 Conn. 160, 363 A.2d 22 (1975);

---

[5] Practice Book § 24 provides that: "An attorney who is in good standing at the bar of another state, the District of Columbia, or the commonwealth of Puerto Rico, may, upon special and infrequent occasion and for good cause shown upon written application presented by a member of the bar of this state, be permitted in the discretion of the court to participate to such extent as the court may prescribe in the presentation of a cause or appeal in any court of this state; provided, however, that a member of the bar of this state must be present at all proceedings and must sign all pleadings, briefs and other papers filed with the court and assume full responsibility for them and for the conduct of the cause and of the attorney to whom such privilege is accorded. Where feasible, the application shall be made to the judge before whom such cause is likely to be tried. Good cause for according such privilege shall be limited to facts or circumstances affecting the personal or financial welfare of the client and not the attorney. Such facts may include a showing that by reason of a long-standing attorney-client relationship predating the cause of action or subject matter of the litigation at bar, the attorney has acquired a specialized skill or knowledge with respect to the client's affairs important to the trial of the cause, or that the litigant is unable to secure the services of Connecticut counsel."

see also *Silverman* v. *Browning,* 414 F. Sup. 80 (D. Conn.), aff'd, 429 U.S. 876, 97 S. Ct. 228, 50 L. Ed. 2d 162 (1976).

Although the court receiving an application for admission pro hac vice has broad discretionary power, the exercise of that power is not unfettered. Our federal and state constitutions prohibit requiring applicants— including those who request admission for "special and infrequent occasion"—to possess qualifications that have no "rational connection with the applicant's fitness or capacity to practice law." *Schware* v. *Board of Bar Examiners,* 353 U.S. 232, 239, 77 S. Ct. 752, 1 L. Ed. 2d 796 (1957);[6] *State* v. *Reed,* supra.

A trial court entertaining an application for admission pro hac vice must also consider the interests of the client who seeks to have the out-of-state attorney admitted.[7] The right to have counsel of one's own choice,[8] although not absolute, is important enough to

[6] "Obviously an applicant could not be excluded merely because he was a Republican or a Negro or a member of a particular church. Even in applying permissible standards, officers of a State cannot exclude an applicant when there is no basis for their finding that he fails to meet these standards, or when their action is invidiously discriminatory. Cf. *Yick Wo* v. *Hopkins,* 118 U.S. 356 [6 S. Ct. 1064, 30 L. Ed. 220 (1885)]." *Schware* v. *Board of Bar Examiners,* 353 U.S. 232, 239, 77 S. Ct. 752, 1 L. Ed. 2d 796 (1957); see also *In re Griffiths,* 413 U.S. 717, 93 S. Ct. 2851, 37 L. Ed. 2d 910 (1973).

[7] Although our Practice Book rule § 24 requires local counsel to present the application, we recognize that the application is submitted at the request of the litigant.

[8] The right to employ counsel of one's own choice in criminal trials stems from the sixth amendment and is recognized as within the panoply of constitutional rights afforded a criminal defendant. See *Chandler* v. *Fretag,* 348 U.S. 3, 75 S. Ct. 1, 99 L. Ed. 4 (1954); *Powell* v. *Alabama,* 287 U.S. 45, 53 S. Ct. 55, 77 L. Ed. 158 (1932). Civil litigants arguably enjoy similar constitutional protection to counsel of their own choosing. Cf. *NAACP* v. *Button,* 371 U.S. 415, 83 S. Ct. 328, 9 L. Ed. 2d 405 (1963) (litigation as a vehicle of political expression protected by first amendment); see also *United Transportation Union* v. *Michigan,* 401 U.S. 576, 91 S. Ct. 1076,

require a legitimate[9] state interest before a person can be deprived of that right. See *State* v. *Rapuano*, 192 Conn. 228, 232–33, 471 A.2d 240 (1984); *United States* v. *Curcio*, 694 F.2d 14, 23 (2d Cir. 1982); see also *United States ex rel. Spurlark* v. *Wolff*, 683 F.2d 216, 220 (7th Cir. 1982). In fact, Practice Book § 24 embodies this constitutional mandate, requiring the court to consider the "facts or circumstances affecting the personal or financial welfare of the client," when reviewing the application. This limited scope of inquiry strikes the balance between the state's interest in regulating attorneys seeking to be admitted to practice pro hac vice and the litigant's interest in obtaining counsel of his own choice. In this period of greater mobility among members of the bar and the public, and the corresponding growth in interstate business, a court should reluctantly deny an application to appear pro hac vice. A litigant's request to be represented by counsel of his choice, when freely made, should be respected by the court, unless some legitimate state interest is thwarted by admission of the out-of-state attorney.

Contemporary Mission maintains that the court abused its discretion in denying the application because the court considered factors irrelevant to the good cause requirement of Practice Book § 24, including the nature and difficulty of the case.[10] Although we agree

28 L. Ed. 2d 339 (1971); see generally comment, *"Leis* v. *Flynt:* Retaining a Nonresident Attorney for Litigation," 79 Colum. L. Rev. 572, 581–84 (1979).

[9] Economic protection for in-state attorneys is not, of course, a legitimate state interest. Cf. *Hicklin* v. *Orbeck*, 437 U.S. 518, 98 S. Ct. 2482, 57 L. Ed. 2d 397 (1978) (striking down a preferential hiring statute as violative of the privilege and immunities clause); see *Piper* v. *Supreme Court of New Hampshire*, 723 F.2d 110 (1st Cir. 1983) (en banc) (striking down state residency requirement for attorneys desiring to practice in the state) appeal filed 52 U.S.L.W. 3689 (March 2, 1984) (83-1466).

[10] At the hearing on the application the court asked about the case and was informed by the plaintiff's counsel that the case was simply one for "[g]oods sold and delivered."

that the court did inquire into issues that are clearly irrelevant[11] at the hearing on the application, we find no abuse of discretion.

We have recently stated that "[w]henever counsel for a client reasonably foresees that he will be called as a witness to testify on a material matter, the proper action is for that attorney to withdraw from the case. See *State* v. *Blake,* 157 Conn. 99, 102–103, 249 A.2d 232 (1968); *Jennings Co.* v. *DiGenova,* 107 Conn. 491, 497–99, 141 A. 866 (1928); Code of Professional Responsibility DR 5-102 (A), Practice Book, p. 31. An attorney is not absolutely prohibited from testifying on behalf of a client, but should only do so when the testimony concerns a formal matter, or the need for the testimony arises from an exigency not reasonably foreseeable. *French* v. *Hall,* 119 U.S. 152, 7 S. Ct. 170, 30 L. Ed. 375 (1886); *State* v. *Blake,* supra; *Miller* v. *Urban,* 123 Conn. 331, 333–34, 195 A. 193 (1937) . . . . Where, however, an attorney does not withdraw, a court exercising its supervisory power can enforce the mandate of DR 5-102 (A) and disqualify the attorney. See *State* v. *Jones,* 180 Conn. 443, 448, 429 A.2d 936 (1980), and cases cited therein." *State* v. *Rapuano,* supra, 231–32.

An attorney admitted pro hac vice is governed by the Code of Professional Responsibility and the decisions of this court. At the hearing on the application, the court was informed that all parties intended to call William O'Reilly as a witness. He could not, therefore, have represented Contemporary Mission without violating DR 5-102 (A). Under these circumstances the court

[11] An inquiry into the nature and difficulty of the case is not only irrelevant, but also leads to mistaken perceptions. In this case for example—characterized as simply one for goods sold and delivered—issues involving conflicts of law, parol evidence, and article 2 of the Uniform Commercial Code developed at trial. A court entertaining an application for admission pro hac vice is simply not in the position to measure the difficulty of a case. Nor is the court in a better position than the client to determine at the outset of a case whether a particular out-of-state attorney should be employed.

did not err in concluding that the application should be denied. Cf. *State* v. *Rapuano,* supra; see *State* v. *Reed,* supra.

## II

The defendants' next claim of error concerns the court's decision to strike their counterclaim. On January 16, 1979, the defendants filed a counterclaim alleging that the plaintiff had agreed to render services with respect to the delivery of the printed materials; that it was understood that time was of the essence; and that the plaintiff had breached the agreement by failing to deliver on time. The plaintiff filed a request on January 30, 1979, that the defendants revise the counterclaim. The defendants took no action with respect to the request; and, therefore, on March 18, 1979, the plaintiff filed a motion to strike,[12] which was granted by the court on April 6, 1979.

Thereafter, on June 4, 1979, a second counterclaim was filed by the defendants, alleging the same facts as those contained in the original counterclaim. The plaintiff moved to strike this pleading, claiming that it was not timely filed. The court granted the motion on September 11, 1979.

The defendants maintain that the court erred because the plaintiff's motions were not properly filed and, therefore, should not have been entertained.[13] Specifically, the defendants point to the plaintiff's failure to

---

[12] Our Practice Book rules did not clearly state at the time of this motion what action was required of a party seeking to enforce its request to revise. That defect was remedied by amending Practice Book § 363 on July 1, 1979. See *Rodriguez* v. *Mallory Battery Co.,* 188 Conn. 145, 448 A.2d 829 (1982). The proper motion is a motion for nonsuit. Id.

[13] In its second motion to strike, the plaintiff claimed that the second counterclaim should have been filed within fifteen days of the granting of the first motion to strike, and that failure to abide by this rule subjected the transgressor to judgment. Practice Book § 157 (1979). The defendants apparently concede that if the plaintiff's motions were properly filed, then

file a memorandum of law with the first motion and to have the defendants' copies of the second motion marked with a certificate of service. Neither claim of error is of any merit.

The defendants have failed to present a transcript of the hearing on either motion to strike, or any other evidence demonstrating that these issues were distinctly raised before the trial court. We will abide by our practice, therefore, and not address these claims because they were not raised before the court below. Practice Book § 3063; see *Chaplin* v. *Balkus*, 189 Conn. 445, 447, 456 A.2d 286 (1983); *Schaffer* v. *Schaffer*, 187 Conn. 224, 227–28 n.3, 445 A.2d 589 (1982).

### III

In their final claim of error the defendants maintain that the court erred in refusing to grant their motion to set aside the verdict. In a memorandum of law accompanying the motion, the defendants alleged that the defendant O'Reilly, through conversations with the forewoman of the jury after the conclusion of trial, discovered that the jury had misapplied the law.

A jury verdict may not be impeached by an affidavit of a juror showing "that he misunderstood the instructions of the court." *Josephson* v. *Meyers*, 180 Conn. 302, 311, 429 A.2d 877 (1980), quoting *Wright* v. *Illinois & Mississippi Telegraph Co.*, 20 Iowa 195, 210 (1866). It follows, therefore, that the verdict also may not be impeached by an unsworn and uncorroborated statement offered by a party to the action. The court did not err in denying this motion.

the trial court's ruling was correct. We do not, therefore, pass upon the validity of the motions. We do note, however, that the proper motion as of July 1, 1979, in response to a failure to revise is a motion for nonsuit. Practice Book § 363; see *Burgess* v. *Vanguard Ins. Co.*, 192 Conn. 124, 125, 470 A.2d 244 (1984).

There is no error.

In this opinion the other judges concurred.