[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTIONS TO DISQUALIFY PLAINTIFFS' COUNSEL
The issue presented in this case is whether defendant's motion to disqualify plaintiffs' counsel should be granted where a paralegal formerly employed by defendant's attorneys, and who had been extensively involved in litigation concerning defendant is now employed by plaintiffs' counsel, and where plaintiffs' counsel has set up screening procedures to ensure that confidences are not divulged.
 I
Defendant Chicago Pneumatic Tool Company (hereafter Chicago Pneumatic) moves to disqualify plaintiffs' counsel, The Reardon Law Firm, on the grounds that plaintiffs' counsel has employed a paralegal formerly employed by defendant's attorneys, which employee had been involved extensively in the defense of similar product liability lawsuits brought against defendant.[1]
Chicago Pneumatic states that the employee, Patricia Lannon, "was privy to all stages of the development of (the prior) litigation" and that "(h)er duties included typing and/or filing of all correspondence, including materials which should be privileged as attorney-client communication; typing and/or filing of all internal office memoranda, including those which would be CT Page 6946 classified as attorney-work product, as they include discussions of strategy, tactics and the evaluation of legal theories and factual witnesses." Defendant's Brief, p. 2. It also asserts that Ms. Lannon had access to documents of the client, and was exposed to interoffice conferences concerning the litigation. Id. Ms. Lannon also was privy to discussions concerning trial strategy, the strengths and weaknesses of plaintiffs' case, and defenses to the action. Affidavit of Michael J. Flynn, sworn to April 16, 1991, p. 2. Ms. Lannon in her affidavits annexed to Plaintiffs' Brief does not dispute that she acquired confidential information of the defendant while employed by defendant's attorneys. The matter at issue here is whether the "Chinese Wall"[2] proposed by the plaintiffs is sufficient under the facts of this case to prevent disclosure of the confidential and privileged information.
Chicago Pneumatic opposes plaintiffs' Chinese Wall proposal, and cites cases in which courts have rejected similar proposals based on the continued risk of an inadvertent disclosure, particularly in small law firms. Defendant's Brief, pp. 5-6. It is also asserted that plaintiff will not be unduly harmed by the disqualification since the only discovery to date has been the exchange of written interrogatories, and at least two other local firms, knowledgeable and experienced in the issues presented by this litigation, are available to represent plaintiffs' in this case. Defendant's Brief, p. 6.
Plaintiffs argue that the present motions to disqualify should not be granted unless there is a real risk that the trial will be tainted. Since no such risk is presented here, the court should defer to the right of a client to choose his own counsel. Plaintiffs' Brief, p. 8. Plaintiffs further argue that the standards applied to a nonlawyer moving between firms are not as stringent as those applied to a lawyer. Plaintiffs' Brief, pp. 7-11.
Finally, plaintiffs assert that defendant fails to provide evidence that Ms. Lannon obtained client confidences or disclosed any confidences to plaintiffs' counsel, or that continued representation by plaintiffs' counsel would taint the case. Plaintiffs' Brief, pp. 15-16.
To ensure that continued representation by plaintiffs' counsel does not threaten the integrity of the proceedings, plaintiffs' counsel has erected a Chinese Wall which incorporates the following:
(1) Ms. Lannon will not by permitted to disclose or discuss any information she acquired while employed by defendant's counsel concerning the cases in question; CT Page 6947
(2) The files in question will be kept locked and will not be accessible to Ms. Lannon;
(3) Ms. Lannon will not be permitted in the vicinity of the files when others are working on them;
(4) Ms. Lannon's supervisors, Attorneys Horgan and Provatas, will not work on the cases in question, nor will they maintain any files involving defendant;
(5) Ms. Lannon will sign an affidavit and agreement that she will have no contact with the files, nor will she discuss the files with anyone in plaintiffs' firm or disclose any information she acquired in her former position; and
(6) The attorney who will be handling the files, Attorney Nazzaro, will have no direct contact with Ms. Lannon.
See Letter from Attorney Reardon to Attorney Boyce dated March 15, 1991, appended as Exhibit "B" to Defendant's Brief. See also affidavits signed by Ms. Lannon and affidavits of Attorneys Horgan and Nazzaro. Exhibits B and E; and C and D to Plaintiffs' Brief.
 II
The party moving for disqualification bears the burden of proving facts which indicate that disqualification is necessary, Tagliaferi v. Barry, 2 CTLR 494, (November 12, 1990, Jones, J.); Evans v. Artek Systems Corp., 715 F.2d 788, 792 (2d Cir. 1983). In assessing those facts "a court must balance the risk of violation (of a disciplinary rule) and its consequences against the . . . right to counsel of (one's) choice. If there is an actual violation or there is a substantial likelihood that a disciplinary rule will be violated, the court may disqualify the attorney." Tagliaferi, supra, 2 CTLR at 494 (quoting Evans,715 F.2d at 232-33) (emphasis added).
In a 1988 informal decision on the issue of disqualification of counsel based on knowledge acquired by nonlawyers while in the employ of another law firm, the American Bar Association Standing Committee on Ethics and Professional Responsibility concluded that, under the ABA Model Rules of Professional Conduct, a law firm that hires a paralegal formerly employed by another law firm may continue to represent clients whose interests conflict with the interests of clients of the former employer on whose matters the paralegal has worked, so long as the employing firm screens the paralegal in accordance with guidelines set forth in the Committee's opinion, and as long CT Page 6948 as no information relating to said clients is revealed to the employing firm. Informal Opinion 88-1526 BNA Lawyers' Manual on Professional Conduct 901:318 (June 22, 1988). The Committee established the following guidelines for the screening of a nonlawyer:
(1) The nonlawyer should be cautioned not to disclose any information relating to the representation of a client of the former employer, and not to work on any matter on which he or she worked for the prior employer or respecting which he or she has information relating to the representation of any client of the former employer; and
(2) The employing firm must take reasonable steps to ensure that the employee takes no action and does no work in relation to such matters. Id. at 901:321.
Certain circumstances, however, would make disqualification mandatory, absent consent of the former employer's client.
 These circumstances are present either: (1) where information relating to the representation of an adverse party gained by the nonlawyer while employed in another firm has been revealed to lawyers or other personnel in the new firm . . .; or (2) where screening would be ineffective or the nonlawyer necessarily would be required to work on the other side of the same or a substantially related matter on which the nonlawyer worked or respecting which the nonlawyer has gained information relating to the representation of the opponent while in the former employment. Id.
The ABA Committee reasoned: "it is important that nonlawyer employees have as much mobility in employment opportunity consistent with the protection of clients' interests. To so limit employment opportunities that some nonlawyers trained to work with law firms might be required to leave the careers for which they have been trained would disserve clients as well as the legal profession. Accordingly, any restrictions on the nonlawyer's employment should be held to the minimum necessary to protect confidentiality of client information." Id.
Only one Connecticut case has decided the issue at bar. In Gazda v. Olin Corp., 5 CSCR 227 (January 18, 1990, CT Page 6949 Hodgson J.), the court relied on the opinion of the Standing Committee discussed above and concluded that reasonable efforts had been taken to ensure that the nonlawyer, a third-year law student who had worked as a legal secretary for the movant's two-lawyer firm, would not divulge any confidences she might have acquired. Id. at 227. "(I)mmediate and thorough measure to prevent disclosures are sufficient and . . . disqualification of the hiring firm is not warranted unless the nonlawyer employed has in fact divulged a confidence." Id.
While the court in Gazda recognized that there may be circumstances in which the nonlawyer's involvement in the client's representation is so complete as to require disqualification, where the nonlawyer merely "had access" to files, disqualification was not necessary. Id. The court further determined that Sections 1.6, 1.7, 1.9, and 1.10 of the Rules of Professional Conduct apply to members of the profession and not to support staff. Id.
Motions to disqualify counsel on the basis of its employment of a nonlawyer from an adverse party's firm were denied in three other cases. See Kapco Manufacturing Company v. C O Enterprises, Inc., 637 F. Sup. 1231 (N.D.Ill. 1985); Herron v. Jones, 637 S.W.2d 569 (Ark. 1982); Esquire Care, Inc. v. Maguire, 532 So.2d 740 (Fla.Dist.Ct.App. 1988).
Kapco concerns a secretary/office manager who had received confidential information including trial strategy before changing employment. The nonlawyer in that case testified at an evidentiary hearing that she had had no discussions regarding her former employer's client with her new employer nor had she done any work on those matters at her new firm. She also testified that no one from the new firm had ever questioned her regarding her former employer, the client or the pending cases, and that she had volunteered no information. She further indicated she had not seen the file maintained by her now employer on the litigation in question. There was also testimony that all employees at her new firm had been directed not to discuss anything regarding the former firm, client or case with her, and that the mandate had been complied with.
The Kapco court applied the same standard to the secretary as would apply to a lawyer, and held that the motion to disqualify should be denied based on the clear and effective demonstration by the nonmoving party that it did not in fact have knowledge of any confidential information of the client. Id. at 1238.
Further, the moving party failed to persuade the court that the secretary was likely to disclose confidential CT Page 6950 information in the future. Id. The court found that the precautions taken by the new employer were sufficient and stated: "An absolute finding of no possible inadvertent sharing of confidences is not required to establish an effective rebuttal (that confidences were shared)." Id. at 1240 (emphasis in original).
A ruling by the trial court to disqualify counsel pursuant to the Code of Professional Responsibility, requiring that a lawyer avoid even the appearance of impropriety, was reversed by the Arkansas Supreme Court in Herron because the screening procedures initiated by the new employer, similar to those set up in Kapco, were found to be sufficient to ensure the confidentiality of any information possessed by the nonlawyer as the result of her former position. Herron v. Jones, supra,637 S.W.2d at 571. The court also discussed the impossibility of avoiding such potential conflicts given that the limited pool of nonlawyer employees services many law firms in the area. Id. Thus, the implication is that if screening procedures are adequate, counsel should not be disqualified since the employment needs of law firms for nonlawyer personnel warrant against such disqualification.
Esquire Care, supra, a Florida appellate case from the Second District, held that disqualification was not required where the moving party had not shown that the law firm in question had obtained an unfair advantage which could only be alleviated by removal of the firm. Esquire Care,532 So.2d at 742. The fact that a nonlawyer has acquired confidential information in a former job is not sufficient by itself to require disqualification of the new employer. Id. at 741.
An earlier Florida case, Lackow v. Walter E. Heller 
Company Southeast, Inc., 466 So.2d 1120 (Fla. Dist. Ct. App. Third Dist. 1985), reached a contrary conclusion in a motion to disqualify where a secretary for defendant's law firm began working for plaintiff's attorneys during the pendency of the litigation. The Third District Court determined that nonlawyers are to be held to the same standards as lawyers when they leave legal employment with confidential information. Id. at 1123. Thus, where the moving party shows that the nonlawyer who now works for opposing counsel had been privy to confidential information in the course of her employment with the moving party's firm, "(n)othing more (is) required . . . to support the disqualification of (opposing) counsel. . . ." Id. Cf. Esquire Care, 532 So.2d 740 (Florida District Court of Appeals for Second District declines to adopt this strict standard). The facts in Lackow reveal that no precautions were taken whatsoever to screen the nonlawyer in question, or to ensure that confidences were not disclosed. Further, it was undisputed that CT Page 6951 the nonlawyer had been working on the same litigation for her new employer. Id. Therefore, this case is distinguishable on its facts.
Williams v. Trans World Airlines, Inc., 588 F. Sup. 1037
(W.D.Mo. 1984), under similarly egregious circumstances, granted defendant TWA's motion to disqualify. In Williams, a former employee of TWA, who had closely worked with and assisted TWA's defense counsel in TWA's defense against several age discrimination claims pending before the Equal Employment, "Opportunities Commission ("EEOC"), hired plaintiffs' law firm to assist her with a discrimination suit against TWA. The court found that plaintiffs' attorneys had free access to any information the former employee had acquired about TWA. Id. at 1043-44. No attempt had been made by plaintiffs' attorneys to ensure the continued confidentiality of such information. Id. In fact, plaintiffs' counsel used the confidential information gained from their new employee in an attempt to coerce TWA to settle. Id. at 1045. The court states that "the potential for unfair discovery of information through private consultation rather than through normal discovery procedures threatens the integrity of the trial process," and, although the court notes its "considerable reluctance" to disqualify counsel, concludes that the only effective way to protect the judicial process is to grant TWA's motion to disqualify. Id. at 1045. The case cited by defendant, MMR/Wallace Power Industrial Incorporated v. Thames Associates, et al, Civil No. M-89-75, U.S. Dist. Ct., Dist. of CT (17 CLT 13, at P. 27) is also distinguishable on its facts because the disqualified firm had hired plaintiff's office manager for the specific purpose of obtaining confidential information, and had obtained such information.
 III
The courts almost uniformly have weighed the moving party's right to a fair trial against the opposing party's right to retain the counsel of its choice, and note the time and investment made by clients and the hardship imposed when they must seek new counsel.
In almost every case described herein, the courts have denied motions to disqualify when the court is persuaded that no confidential information has been disclosed and that precautions have been taken to avoid disclosure of such information. Only in the most egregious of cases, such as where actual disclosure has been made, or when the employee is working on files which are the same or substantially related to those worked on in the former employment, has a court granted a motion to disqualify.
In this case, the defendant has not met its burden to CT Page 6952 show that Ms. Lannon has disclosed confidential information to her new employer. Nor has it sustained its burden of proving that the plaintiffs' law firm was tainted or "infected" by the hiring of Ms. Lannon, or that plaintiffs have obtained an unfair advantage over the defendant which can only be remedied by the removal of plaintiffs' attorneys. "The disqualification of a party's chosen counsel is a harsh sanction, and an extraordinary remedy which should be resorted to sparingly." Esquire Care, supra, 741. The court on the state of this record is not persuaded to invoke such a remedy. Moreover, the "Chinese Wall" erected to ensure that confidences will not be revealed in the future appears sufficient and reasonable to accomplish that end. The court must presume that plaintiffs' counsel will scrupulously comply with the Rules of Professional Conduct. See, for example, the Preamble, sections 5.1, 5.2 and 5.3.
Accordingly, defendant Chicago Pneumatic Tool Company's motion to to disqualify plaintiffs' counsel is denied, so long as the "Chinese Wall" set forth in Plaintiffs' Brief and affidavits remains in effect. For the same reasons set forth the motions to disqualify plaintiffs' counsel by defendants Dresser Industries, Inc. and The Stanley Works are also denied. In the view this court takes of the case, it is unnecessary to reach the issue as to whether the latter two defendants, the paralegal never having been employed by them or their counsel, lack standing to move to disqualify plaintiffs' counsel.
Teller, J.