RICHARD A. MATZA *v.* JANE W. MATZA
(10031)
DALY, NORCOTT and HEIMAN, Js.

Argued January 7—decision released June 16, 1992

*Wesley W. Horton,* with whom were *Alexandra Davis* and, on the brief, *Jeffrey A. Hoberman,* for the appellant (defendant).

*William H. Narwold,* with whom were *William T. Fitzmaurice, C. Ian McLachlan* and, on the brief, *Katherine C. Stuttman,* for the appellee (plaintiff).

HEIMAN, J. The defendant, Jane W. Matza, appeals from the trial referee's judgment dissolving the parties' marriage. She claims that (1) the trial referee improperly granted her attorney's motion to withdraw as counsel, (2) the judge who ruled on the motion to withdraw improperly failed to conduct an evidentiary hearing on the motion, (3) her attorney's motion to withdraw was improperly referred to a judge rather than having been considered by the trial referee who presided over the dissolution action, (4) the trial referee improperly drew an adverse inference from the defendant's failure to testify, and (5) the trial referee improperly denied the defendant's motion for a mistrial made following the withdrawal of counsel. Because we conclude that the failure to conduct a hearing on the motion to withdraw violated the defendant's right to due process of law, we reverse the judgment.

A summary of this protracted and tortuous litigation is necessary to appreciate fully the issues presented by this appeal. The underlying dissolution of marriage proceeding was commenced on June 14, 1988. Judgment was rendered on February 21, 1991, thirty-two months later. During the course of this action, three attorneys filed appearances on the defendant's behalf but subsequently withdrew their representation of her. The first, Gary I. Cohen, filed a motion to withdraw from the case in which he claimed that "difficulties have arisen between counsel and client which make effective representation impossible."

On November 29, 1988, Attorney Arnold M. Potash filed an appearance in lieu of Cohen. On December 20, 1988, the court, *Harrigan, J.,* issued temporary alimony and support orders, but vacated those orders on

June 27, 1989, after concluding that a financial affidavit filed by the defendant was "unquestionably inaccurate" and "misleading." After Judge Harrigan vacated the temporary alimony and support orders, hearings on a subsequent motion for temporary alimony were held before the court, *F. Freedman, J.* Judge Freedman issued temporary alimony and support orders on August 8, 1989. On November 21, 1989, Judge Freedman ordered the trial to commence on February 15, 1990. On January 10, 1990, the defendant discharged Potash and on January 26, 1990, Attorney J. Daniel Sagarin filed an appearance in lieu of Potash. On January 29, 1990, Judge Freedman referred the case to the Honorable John Ottaviano, state trial referee, for trial, stating "[t]here will be no further continuances." Nonetheless, the case again was continued.

On May 16, 1990, the first day of trial before Judge Ottaviano, the defendant attempted to fire Sagarin. Judge Freedman referred the matter, without objection, to the court, *Mihalakos, J.* Sagarin made an oral motion to withdraw before Judge Mihalakos on the basis of his representation that the defendant no longer wanted him to represent her. Judge Mihalakos denied the motion and the trial commenced later that day before Judge Ottaviano.

On May 17, 1990, after one and one-half days of direct examination of the plaintiff, Sagarin began cross-examination. Judge Ottaviano then suspended the trial from May 18, 1990, to May 22, 1990, to allow the parties to conduct settlement negotiations. On May 24, 1990, with no settlement pending, Judge Ottaviano scheduled the trial to resume on July 17, 1991. Judge Ottaviano noted that the defendant had yet to file a financial affidavit and ordered her to do so or be sanctioned.

The following day, Sagarin delivered a motion to withdraw as counsel together with a supporting memorandum under seal and a letter to Judge Freedman requesting that the motion be assigned to Judge Mihalakos to avoid prejudicing the defendant before Judge Ottaviano. On June 8, 1990, an attorney employed by Sagarin's law firm offered Judge Mihalakos a sealed affidavit in support of the motion. The defendant objected to Sagarin's motion to withdraw and his submission of the affidavit and requested a continuance to prepare a response to the motion. Attorney Dominic Barbara, a New York attorney who had represented the defendant in other matters but had not filed an appearance in this case, also objected to the affidavit's being shown to the plaintiff's counsel, but not to its review by the court. Judge Mihalakos postponed the hearing until June 12, 1990.

On June 12, 1990, Sagarin pursued the motion to withdraw at a hearing before Judge Mihalakos, arguing that his continued representation of the defendant would result in his participation in the defendant's fraudulent or improper conduct and urging Judge Mihalakos to conduct an in camera review of his affidavit. After the plaintiff's attorney objected to an in camera review, the defendant stated: "I . . . definitely do not want this affidavit opened up. I think it's privileged, and if it is submitted I think there should be a hearing without [the plaintiff's attorney] present so we can ask them questions about this affidavit."

Judge Mihalakos then recessed and read Sagarin's affidavit, the contents of which may be summarized as follows: The defendant's use of $196,000 in proceeds from the sale of a Florida condominium was in dispute in the case. After reviewing testimony given by the defendant before Sagarin entered the case as her attorney, Sagarin advised the defendant that her prior testimony regarding the use of the proceeds from the

condominium's sale was "not inherently credible." The defendant then told Sagarin that she had used $75,000 of the proceeds to repay a loan from her father. Sagarin's interview with her father, however, left him skeptical of this claim. Although Sagarin advised the defendant that he would not allow perjurious testimony or fraudulent documents to be admitted at trial, the defendant refused to admit the falsity of her claim and refused to sign a financial affidavit that was prepared with her approval.

The affidavit further stated the following: On May 14, 1990, Sagarin had received a call from Barbara who claimed that he had been retained by the defendant's family to protect her interests. Barbara stated that he previously had advised the defendant not to tell the "phony story" about the condominium's proceeds. Sagarin considered the conversation with Barbara to be "extrinsic proof . . . that the story should not be presented to the court." On May 17, 1990, Barbara appeared in court in Connecticut and told Sagarin that he had been retained by the defendant's father and was being paid $4000 per day. Sagarin concluded that because her father could not afford to pay the retainer, the retainer was being paid out of funds hidden by the defendant. From these facts, Sagarin concluded that the defendant's refusal to sign her financial affidavit was based on "concerns over perjury and fraud."

After reviewing Sagarin's affidavit, Judge Mihalakos returned to the bench and granted Sagarin's motion to withdraw as counsel. When the trial resumed on July 17, 1990, the defendant sought another continuance for the purpose of obtaining counsel. Over the plaintiff's objection, Judge Ottaviano granted her a one week continuance. He also granted Barbara's request to appear on the defendant's behalf pro hac vice, provided Barbara retain local counsel. See Practice Book § 24.

Barbara failed, however, to appear in court on July 23, 1990, or any time thereafter. Instead, Attorney Donald Cantor, the defendant's fifth attorney, appeared on the defendant's behalf and requested a three month continuance and an order that the plaintiff pay him a $50,000 retainer. Judge Ottaviano denied both requests, and trial resumed the following day. The defendant appeared, unaccompanied by an attorney, and requested another continuance for the purpose of engaging counsel, which the court denied. The defendant represented herself throughout the remainder of the trial. On February 21, 1991, Judge Ottaviano rendered judgment dissolving the parties' marriage and entering consequential orders regarding custody, support and visitation of the parties' children, alimony and the division of the parties' assets and liabilities. This appeal followed.

## I

The defendant claims that Judge Mihalakos improperly granted Sagarin's motion to withdraw because the allegations contained in Sagarin's affidavit, even if true, were insufficient to justify withdrawal under the Rules of Professional Conduct. We disagree.

"The Superior Court has inherent and statutory authority to regulate the conduct of attorneys who are officers of the court." *State* v. *Jones,* 180 Conn. 443, 448, 429 A.2d 936 (1980). The Rules of Professional Conduct have been approved, not adopted, by the judges of the Superior Court. Although they are not binding rules of court, they provide the courts with guidance in confronting issues of professional ethics. Ultimately, however, "[t]he right of counsel to withdraw from any case is a matter which rests within the sound discretion of the court, and this is particularly so where permission is sought during the course of the trial . . . ." *Cascella* v. *Jay James Camera Shop, Inc.,* 147 Conn. 337, 340, 160 A.2d 899 (1960).

Rule 1.16 (b) of the Rules of Professional Conduct provides in pertinent part that "a lawyer may withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client, or if: (1) The client persists in a course of action . . . that the lawyer reasonably believes is criminal or fraudulent . . . ." Under the plain language of the rule, an attorney may be permitted to withdraw from representation, even if withdrawal will have an adverse effect on his client, if he reasonably believes that his client is persisting in a criminal or fraudulent course of action. Here, Judge Ottaviano ordered the defendant to file her financial affidavit or to face sanctions. The affidavit was signed and sworn to by the defendant on May 30, 1990. The rules did not require Sagarin to file the affidavit and risk perpetrating a fraud on the court before filing his motion to withdraw as counsel. Further, we cannot say that the allegations of Sagarin's affidavit are insufficient, if true, to support a conclusion that Sagarin had a reasonable belief that the defendant's affidavit was fraudulent.[1]

## II

The defendant next claims that Judge Mihalakos improperly failed to conduct an evidentiary hearing on Sagarin's motion to withdraw as counsel. We agree.

We begin our analysis by noting that we share the trial judges' frustration with the glacial pace of this litigation and the defendant's substantial and apparently deliberate contribution to it. The defendant's conduct concerning her employment and retention of counsel is, at best, troubling.

Nonetheless, Judge Mihalakos should not have allowed Sagarin to withdraw solely on the basis of his

---

[1] We express no opinion on the accuracy of the allegations set forth in the affidavit.

review of Sagarin's affidavit. Rather, he should have allowed the defendant an opportunity to contest the factual underpinnings of the affidavit in order to mount a meaningful opposition to the motion to withdraw. The right to an evidentiary hearing to contest important issues of fact has been recognized as a requirement of due process of law under the fourteenth amendment to the United States constitution and article first, § 10, of the Connecticut constitution. *Society for Savings* v. *Chestnut Estates, Inc.,* 176 Conn. 563, 577, 409 A.2d 1020 (1979); see also *Standard Tallow Corporation* v. *Jowdy,* 190 Conn. 48, 56, 459 A.2d 503 (1983); *Roundhouse Construction Corporation* v. *Telesco Masons Supplies Co.,* 168 Conn. 371, 385, 362 A.2d 778, vacated, 423 U.S. 809, 96 S. Ct. 20, 46 L. Ed. 2d 29 (1975), on remand, 170 Conn. 155, 365 A.2d 393, cert. denied, 429 U.S. 889, 97 S. Ct. 246, 50 L. Ed. 2d 172 (1976) (right to hearing under federal constitution); *Bartley* v. *Bartley,* 27 Conn. App. 195, 197–98, 604 A.2d 1343 (1992). " 'In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine witnesses.' *Goldberg* v. *Kelly,* [397 U.S. 254, 269, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970)]. 'It has long been recognized that "fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights. . . . [And n]o better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it." *Joint Anti-Fascist Refugee Committee* v. *McGrath,* 341 U.S. 123, 170–72, [71 S. Ct. 624, 95 L. Ed. 2d 817] (Frankfurter, J., concurring).' *Fuentes* v. *Shevin,* [407 U.S. 67, 81, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972) . . . . [N]ext to this right, the significance of any argument for judicial expediency or efficiency pales." *Society for Savings* v. *Chestnut Estates, Inc.,* supra, 574.

Sagarin's motion to withdraw raised important, contested issues of fact that should not have been resolved without an evidentiary hearing. Our courts, in reviewing trial court rulings on motions to admit attorneys pro hac vice, have recognized that litigants in a civil case enjoy a right to counsel of their choice, which cannot be infringed upon absent a legitimate state interest. See *Herrmann* v. *Summer Plaza Corporation,* 201 Conn. 263, 268–69, 513 A.2d 1211 (1986); *Enquire Printing & Publishing Co.* v. *O'Reilly,* 193 Conn. 370, 374–75, 477 A.2d 648 (1984); *Yale Literary Magazine* v. *Yale University,* 4 Conn. App. 592, 605, 496 A.2d 201 (1985), aff'd, 202 Conn. 672, 522 A.2d 818 (1987). Indeed, our Supreme Court has indicated that Practice Book § 24, which requires a trial court ruling on a motion for admission to the bar pro hac vice to give "due consideration" to the client's interests in being represented by his counsel of choice, "embodies this constitutional mandate." *Herrmann* v. *Summer Plaza Corporation,* supra, 268. Because a litigant's right to counsel of choice in a civil case is rooted in constitutional principle, trial courts also must give due consideration to the litigant's interests when ruling on a motion to withdraw as counsel. Where the court's determination as to whether a legitimate state interest exists that outweighs the right to counsel of choice turns on contested issues of fact, the court cannot give the litigant's interests due consideration without conducting an evidentiary hearing.

The right to counsel of choice is not, however, absolute. Id. Rather, considerations of professional ethics may constitute a legitimate state interest sufficient to overcome the litigant's right to counsel of choice. *Enquire Printing & Publishing Co.* v. *O'Reilly,* supra, 376–77; *Yale Literary Magazine* v. *Yale University,* supra. In deciding whether the considerations of professional ethics in this case were sufficient to overcome

the defendant's right to counsel of her choice; see *Enquire Printing & Publishing Co.* v. *O'Reilly,* supra; *Yale Literary Magazine* v. *Yale University,* supra; Judge Mihalakos was required to determine whether the alleged facts that gave rise to the ethical concerns were true, and, if so, whether they were compelling enough to overcome the defendant's interest in being represented by Sagarin. Although the defendant unequivocally requested an opportunity to protect her interests by contesting those factual allegations, Judge Mihalakos resolved them after merely reviewing Sagarin's affidavit. Because the motion to withdraw involved critical issues of fact that impacted on the defendant's compelling interest to be represented by her counsel of choice, due process of law as guaranteed by the fourteenth amendment to the United States constitution and article first, § 10, of the Connecticut constitution required Judge Mihalakos to afford the defendant a hearing to contest the factual allegations contained in Sagarin's affidavit.

We disagree with the plaintiff's contention that Judge Mihalakos properly denied the defendant's request for a hearing because she requested an ex parte hearing. The issues presented by the motion to withdraw did not implicate the plaintiff's rights because the plaintiff has no legally cognizable interest in the defendant's choice of counsel. Although the plaintiff has a significant interest in avoiding undue delay, that interest does not ripen unless and until the motion to withdraw is granted and the issue of a continuance is raised. Further, because there was a substantial likelihood that a hearing on the motion to withdraw would have involved disclosure of communications protected by the attorney-client privilege, the trial court would have acted well within its discretion had it excluded the plaintiff from a hearing on the motion.

## III

Finally, the defendant claims that Sagarin's motion to withdraw was improperly referred to Judge Mihalakos. Although the defendant acknowledges that the issue was not preserved for appellate review, she urges us to consider the issue under the plain error doctrine. See Practice Book § 4185.

Practice Book § 430 provides for the referral of cases to a state trial referee. It states in pertinent part: "Any case referred to a trial referee shall be deemed to have been referred for all further proceedings and judgment, including matters pertaining to any appeal therefrom, unless otherwise ordered before or after the reference." The defendant claims that because the record reflects no order for proceedings before someone other than Judge Ottaviano, Judge Mihalakos was not authorized to rule on Sagarin's motion to withdraw.

Although this court is not bound to consider a claim unless it was distinctly raised at trial or arose after the trial, we may, in the interests of justice, review unpreserved claims under the plain error doctrine. Practice Book § 4185. Plain error review generally is "reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." *State* v. *Hinckley,* 198 Conn. 77, 87–88, 502 A.2d 388 (1985); *Goral* v. *Kenney,* 26 Conn. App. 231, 236, 600 A.2d 1031 (1991); *Cuartas* v. *Greenwich,* 14 Conn. App. 370, 375, 540 A.2d 1071 (1988). Here, Sagarin's affidavit contained allegations of fraud that were tremendously prejudicial to the defendant. The referral of the motion to Judge Mihalakos shielded the defendant from prejudice by removing these allegations from consideration by the trier of fact. As such,

the referral served to safeguard, not compromise, the fairness and integrity of and public confidence in the proceedings. There is no plain error.

## IV

Because the defendant has not challenged the trial court's financial awards, she cannot demonstrate that she was prejudiced by the adverse inference that she claims the trial court drew against her. See *Starzec* v. *Kida,* 183 Conn. 41, 438 A.2d 1157 (1981); *Graham* v. *Graham,* 25 Conn. App. 41, 48, 592 A.2d 424, cert. denied, 220 Conn. 903, 593 A.2d 969 (1991). Thus, the defendant's claim that the trial court improperly drew an adverse inference against her is moot, and we decline to review it. *Graham* v. *Graham,* supra.

In light of our disposition of this case, it is not necessary to consider the defendant's claim that the withdrawal of counsel was grounds for a mistrial.

The case is remanded for a hearing on Sagarin's motion to withdraw; if that motion is denied, the judgment is reversed and the case is remanded for a new trial; if the motion to withdraw is granted, the judgment is affirmed.

In this opinion the other judges concurred.