[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: OBJECTIONS TO ADMISSION PRO HAC VICE
The plaintiff in these six actions is Gamlestaden PLC ("GPLC"), a medium and short-term financing company incorporated under the laws of England and Wales. Plaintiff is a subsidiary of a Swedish company. The defendants are two individuals, Magnus Lindholm ("Lindholm") and Adam Backstrom ("Backstrom"), as well as the following corporations allegedly controlled by Lindholm and Backstrom: Starlux Corporation Liberia ("Starlux"), Castlegar Holdings S.A. ("Castlegar"), Intermobil Realty and Development Corporation ("Intermobil"), and Stuart Resources S.A. ("Stuart"). The third party defendants are Gamlestaden AB ("GAB"), a Swedish holding company which is the parent of the plaintiff; Gamlestaden Intressenter AB ("GI"), a Swedish holding company that is the parent of GAB and ultimate parent of plaintiff; and Forvaltnings AB Gamlestaden ("FAB"), another subsidiary of GI that concentrates on financing of securities and real estate in Europe.
According to plaintiff, three entities controlled by Lindholm and/or Backstrom — Starlux, Castlegar and Stuart — borrowed over 25 million dollars from plaintiff. Plaintiff alleges that each note is evidenced by a written loan facility agreement or a promissory note, and that each loan is collateralized by written personal guaranties by Lindholm and/or Backstrom. Plaintiff originally filed a ten-count action against defendants (CV920127912) on October 1, 1992. Defendants filed a motion to strike the complaint on the grounds that the ten counts were improperly joined. The motion was granted by the court, Rush, J., on February 11, 1993. Subsequently, the action was separated into six individual actions.
The defendants claim that the principal shareholder of Starlux is Lindholm and that all of Starlux's operations were run through Lexmar Corporation ("Lexmar"), of Connecticut, its managing agent. In an approximately 90-count third party complaint, defendants allege that the third party defendants interfered with relations between Starlux and the plaintiff, as well as between Starlux and other creditors and purchasers of certain Starlux assets. Defendants claim that GAB, GI and FAB are alter egos of the plaintiff and allege, inter alia, that the third party defendants breached a workout agreement that had been reached between plaintiff and Starlux under which plaintiff had promised financial support of certain Starlux assets, including the sale of its ships and the restructuring of a Spanish subsidiary known as Lineas Ecoa. CT Page 6275
On April 11, 1994, GI filed a motion for pro hac vice admission for Anthony Mansfield, Michael McNamara and Michael Kreitman, attorneys admitted to practice in New York, requesting that they may appear for the third party defendants. These three attorneys are members of a firm in New York called Seward and Kissel ("SK"), and state in their affidavits that the firm has been acting in an advisory capacity to third party defendants for approximately seven months, starting before the third party action filed.
On April 22, 1994, the defendants filed an objection to the motion for pro hac vice admission on the grounds that SK is disqualified from representing a party adverse to the defendants in this litigation under Rules 1.7 and 1.10 of the Rules of Professional Conduct. Defendants claim that a group of maritime attorneys and paralegals at SK who came from a firm known as Hill, Betts Nash ("HBN") have an attorney-client relationship with defendants. The third party defendants filed briefs in support of their motion for pro hac vice admission, dated May 4, 1994 and May 12, 1994. Defendants also filed further briefs in support of the objection, dated May 5, 1994 and May 16, 1994. Numerous affidavits and other materials have also been submitted by defendants and third party defendants. Defendants submitted two affidavits of Claes-Johan Geijer, Treasurer of Starlux and President of Lexmar; the affidavit of Gary MacMillian, counsel for defendants in this litigation; the plaintiff's annual reports from 1991 and 1992, which name GI as plaintiff's ultimate parent company and GAB as its immediate parent; and correspondence and invoices sent to Lexmar from HBN and SK. The third party defendants submitted the affidavits of Mansfield, a partner at SK who is seeking pro hac vice admission; Marlene Daniels, a partner of SK who was formerly member of HBN; Arthur Lichtenstein, a paralegal at SK who was formerly employed by HBN; and Lawrence Rutkowski, a partner at SK who was formerly a member of HBN; as well as several interoffice memoranda to the Lexmar files and the files for the present litigation implementing a "Chinese wall" between the two files.
"The decision to grant or deny an application to appear pro hac vice rests within the sound discretion of the trial court."[1]Enquire Printing Publishing Co. v. Reilly, 193 Conn. 370, 373,447 A.2d 648 (1984). "A request to appear pro hac vice should be granted `unless some legitimate state interest is thwarted by admission of the out-of-state attorney.'" (Citation omitted.)Yale Literary Magazine v. Yale University, 4 Conn. App. 592, 602,496 A.2d 201 (1985), aff'd, 202 Conn. 672, 522 A.2d 818 (1987). CT Page 6276 "The legitimate state interest thwarted by the admission of out-of-state attorney, sufficient to overcome the litigant's right to have counsel of his choice, generally involves ethical problems caused by allowing out-of-state counsel to appear. Id., 605; see also Enquire Printing Publishing Co. v. Reilly, supra.
"The trial court has the authority to regulate the conduct of attorneys and has a duty to enforce the standards of conduct regarding attorneys." Bergeron v. Mackler, 225 Conn. 391, 397,623 A.2d 489 (1993). "[A] trial court has broad discretion to determine whether there exists a conflict of interest that would warrant disqualification of an attorney." Id. Courts must be solicitous of a client's right freely to choose his counsel, mindful of the fact that a client whose attorney is disqualified may suffer the loss of time and money in finding new counsel and "`may lose the benefit of its longtime counsel's specialized knowledge of its operations.'" (Citation omitted.) Id., 398. Three competing interests must be balanced: (1) the defendant's interest in protecting confidential information; (2) the plaintiff's interest in freely choosing counsel of its choice; and (3) the public's interest in the scrupulous administration of justice. Id.
Rule of Professional Conduct 1.7 sets forth the general rule on conflicts of interest in attorney-client relationships, providing in pertinent part that "`lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless . . . [t]he lawyer reasonably believes the representation will not adversely affect the relationship with the other client . . . and [e]ach client consents after consultation.'" Westport Bank Trust Co. v. Corcoran,Mallin Aresco, 221 Conn. 490, 496, 605 A.2d 862 (1992).
 Ordinarily, a lawyer may not act as advocate against a client the lawyer represents in some other matter, even if the other matter is wholly unrelated. However, there are circumstances in which a lawyer may act as advocate against a client. For example, a lawyer representing an enterprise with diverse operations may accept employment as an advocate against the enterprise in an unrelated matter if doing so will not adversely affect the lawyer's relationship with the enterprise or conduct of the suit and if both clients consent upon consultation.
Comments, Rule of Professional Conduct 1.7 (Rev. to 1993). "The CT Page 6277 critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client." Westport Bank Trust Co.v. Corcoran, Mallin Aresco, supra, 498.
In support of their objection to the motion for pro hac vice admission, the defendants argue that GI is the true party in interest behind all Gamlestaden facilities, including plaintiff. The defendants further argue that certain SK attorneys — Marlene Daniels and Lawrence Rutkowski — and a paralegal — Arthur Litchtenstein — formerly worked in the maritime department of HBN, where they entered into an attorney-client relationship with Seth Weinstein, Geijer's predecessor, who was the president of Lexmar, managing agent for Starlux. The defendants claim that Daniels, who headed the maritime group at HBN, performed general corporate services for Starlux and its subsidiaries, including financial advice regarding claims of creditors in the fall of 1990, a pivotal time in this litigation. Defendants also claim that Lichtenstein maintained and created corporate subsidiaries of Starlux and drafted ship financing documents on behalf of such subsidiaries. Defendants argue that the work for Lexmar and its subsidiaries, including Starlux, continued after the maritime department became affiliated with SK. Specifically, defendants claim that HBN drafted legal documents relating to "Sea Traveler II," a transaction involving the plaintiff as part of the overall workout plan alleged by defendants to have been breached by GI. The defendants also claim that Rutkowski worked on the Lineas Ecoa matter and Starlux's financial restructuring, and he counseled Starlux regarding a possible bankruptcy in 1990, the time period from which the allegations in the third party complaint stem. In Geijer's affidavit, he states that in the fall of 1990, Lexmar/Starlux ran into financial difficulties and he met with a group of people, including Rutkowski, on October 18, 1990 to review the affairs and corporate structure of Starlux and its subsidiaries. Geijer states that "Rutkowski was privy to all outstanding charter parties and various claims of creditors . . . and gave legal advice concerning resolution of the financial difficulties of the companies." (Second affidavit of Rutkowski, p. 2).
In response, third party defendants argue that an attorney client relationship does not exist, as Lexmar, not a party to these six actions, is the only entity that has an attorney-client CT Page 6278 relationship with SK. They further argue that neither Daniels nor anyone else in the maritime department has acted as the attorneys for Starlux or any of its subsidiaries since becoming members at SK. According to third party defendants, a nonlawyer at SK has performed a minimal amount of work for Lexmar, and only three quarters of an hour of legal time and thirty hours of paralegal time have been billed to Lexmar since July, 1992. The third party defendants also claim that in February, 1992, all Lexmar files were sent back to the company's offices in Greenwich. The third party defendants further argue that even if HBN and Lexmar did have an attorney-client relationship, there should not be imputed disqualification of SK because the present litigation does not involve the same or substantially related matter as the work that HBN did for Lexmar. In response to defendants' specific allegations of conflict, third party defendants claim that the mortgage drafted by HBN for "Sea Traveler II" has been discharged and is not an issue in this action and even if it was, HBN was only asked after the fact to prepare securities documents in connection with the matter. The third party defendants claim that while it is true that there are issues involving Lineas Ecoa that are material to defenses raised in these cases, those issues do not implicate the limited involvement of HBN at an earlier point in time.
Although the court has broad discretion in ruling on a motion for pro hac vice admission, such motions are generally granted unless a legitimate state interest, such as attorneys' compliance with the Rules of Professional Conduct, is thwarted by such admission. Therefore, it is necessary to analyze the possibility of a conflict if the three SK attorneys who are seeking admission are permitted to represent the third party defendants in this action before the Connecticut courts.
1. Whether an attorney-client relationship exists
The annual reports of plaintiff indicate that third party defendants GAB and GI are the immediate and ultimate parent companies of the plaintiff. (Exhibit A to Defendant's brief, dated May 5, 1994). There appears to be an identity of interests between plaintiff and third party defendants. In addition to the six loan actions, plaintiff filed a separate fraud action against the defendants entitled Gamlestaden PLC v. Backstrom, Lindholm andStarlux (Liberial), CV920128905, and Lexmar is one of the named defendants in this related action.[2] Geijer's affidavits indicate that he is President of Lexmar and Treasurer of Starlux, and that CT Page 6279 Lexmar is the managing agent for Starlux. Furthermore, Geijer is the recipient of most of the bills from HBN and SK to Lexmar.
Defendants' documents offered in support of its objection to pro hac vice admission show that an attorney-client relationship was entered into by Daniels and Rutkowski and Lexmar/Starlux while they were members of HBN. Certain bills for the services of these two attorneys are entitled "corporate matters," "financial restructuring," and "sale of shares for [Lineas Ecoa]." .(Exhibit C to Defendants Brief dated May 5, 1994). In an affidavit submitted to defendants' counsel, Mansfield makes several references to legal work on behalf of "Lexmar and its affiliates." Mansfield affidavit, dated April 25, 1994, p. 3). Furthermore, defendants submitted copies of approximately 20 letters which accompany invoices from Lichtenstein to Geijer on SK stationary, the last of which is dated February 22, 1994. (Exhibit A to Defendant's Brief dated April 22, 1994) These bills include services such as the formation of corporations; obtaining certificates of good standing; the monitoring of certain Liberian charges; and changing the name of vessels.
The third party defendants argue that at most, a paralegal-client relationship exists, which is not covered by the Rules of Professional Conduct. However, the Superior Court cases cited by the third party defendants in support of the proposition that Rules of Professional Conduct 1.7 and 1.10 do not apply to support staff are distinguishable from the present case. Those cases involved paralegals and a former secretary who left one firm and became employed by another firm who represented clients with interests adverse to their former firm's clients. Temkin v. Temkin,10 Conn. L. Rptr. 127 (November 8, 1993, Pickett, J.); Rivera v. ChicagoPneumatic Tool Co., 6 CSCR 786 (August 5, 1991, Teller, J.); Gadzav. Olin Corp. , 5 CS CR 227 January 18, 1990, Hodgson, J.). The courts found that the new law firms should not be disqualified from representing new clients by virtue of the fact that they had hired support staff formerly employed by a firm that represented clients with adverse interests, as long as adequate screening procedures were in place. By contrast, the present case involves a paralegal who moved to another firm along with a department of attorneys who presumably supervised him, and continued to do work on behalf of a client. The third party defendants have cited no authority for the proposition that because the majority of the work done for Lexmar/Starlux from 1992-94 was done by Lichtenstein, the attorney-client relationship Lexmar had with Daniels and Rutkowski, who still worked with Lichtenstein, was terminated. In Temkin v.CT Page 6280Temkin, Judge Pickett noted that:
 Certain circumstances . . . would make disqualification mandatory, absent consent of the former employer's client. These circumstances are present either: (1) where information relating to the representation of an adverse party gained by the nonlawyer while employed in another firm has been revealed to lawyers or other personnel in the new firm . . .; or (2) where screening would be ineffective or the nonlawyer necessarily would be required to work on the other side of the same or a substantially related matter on which the nonlawyer worked or respecting which the nonlawyer has gained information relating to the representation of the opponent while in the former employment.
Temkin v. Temkin, supra, 128, quoting Informal Opinion 88-1526 BNA's Lawyer's Manual on Profession Conduct 901:318, 321 (June 22, 1988).
In the present case, information relating to the representation of Lexmar/Starlux has not only been gained by Lichtenstein, a nonlawyer, but was also gained by two attorneys at HBN who are now partners for SK. There is no indication that the attorney-client relationship ended at any time. According to Geijer's affidavit, Lexmar has not given consent for SK's representation of the third party defendants.
 II. Whether SK is disqualified by virtue of the attorney-client relationship between Daniels and Rutkowski and Lexmar/Starlux
Rule of Professional Conduct 1.10 provides that "[w]hile lawyers are associated with a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9 or 2.2." Subsection (b) of this section provides that:
 [w]hen a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or substantially related matter in which that lawyer, or a firm with which the lawyer has associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(b) CT Page 6281 that is material to the matter.
Rule of Professional Conduct 1.10(b) (Rev. to 1993). The substantial relationship test "has been honed in its practical application to grant disqualification only upon a showing that the relationship between the issues in the prior and present cases is `patently clear' or when the issues are `identical' or `essentially the same.'" (Citations omitted; internal quotation marks omitted.)Bergeron v. Mackler, supra, 225 Conn. 339. "Once a substantial relationship between the prior and present representation is demonstrated, the receipt of confidential information that would potentially disadvantage a former client is presumed." Id.; see also Bergeron v. Mackler, supra, 392 (trial court erred in relying upon "appearance of impropriety" standard to disqualify firm from representing plaintiff in dissolution action due to previous representation of defendant and plaintiff in residential house closing); State v. Jones, 180 Conn. 443, 429 A.2d 936 (1980), overruled in part on other grounds, 186 Conn. 547, 442 A.2d 939
(1989), cert. denied, 459 U.S. 838, 103 S.Ct. 85, 74 L.Ed.2d 80
(1992) (no substantial relationship between murder prosecution and prior representation in property damages claim); Lippman v. Ogle,4 CSCR 660 (August 11, 1989, Lewis, J.) (representation at a closing and a claim of adverse possession were closely related).
Defendants have shown that there is a patently clear relationship between the issues in the present action and the legal work that Daniels, Rutkowski and Lichtenstein have done for Lexmar/Starlux. The court is presented with numerous interlocking companies and individuals on both sides of this action. However, the evidence filed by both parties indicates that an attorney-client relationship exists between Daniels and Rutkowski and Lexmar/Starlux, and there is no evidence that such relationship has been terminated at any time. As noted above, the bills to Lexmar concerned corporate matters, financial matters and the sale of shares for Lineas Ecoa. The present action and third party action involve issues regarding the financial structure or Lexmar and its affiliates, claims of creditors, whether a workout was entered into between plaintiff and defendants, and third party defendants' involvement in the alleged workout. The third party action also concerns the restructuring of Lineas Ecoa. Defendants have met their burden of showing that an attorney-client relationship existed and that Daniels, Rutkowski and Lichtenstein received confidential information which could be used against the defendants in the present action, and would disqualify them from representing the third party defendants. The court finds a substantial CT Page 6282 relationship between the issues involved in the prior work and the present action, and the disqualification of Daniels and Rutkowski should be imputed to all of the attorneys who are members of SK pursuant to Rule 1.10. In this case, the prejudice to the third party defendants, who appear to be ably represented by local counsel and have only been advised by the attorneys from SK for approximately seven months, is outweighed by the defendants' interest in protecting confidential information.
Due to the conflict which arises from SK's representation of these third party defendants, a legitimate state interest may be thwarted by admission of these three out-of-state attorneys. Accordingly, the court denies the motions for pro hac vice admission.
KARAZIN, J.